McELWAINE-RICHARDS COMPANY *v.* WALL.

[No. 20,591.   Filed December 8, 1905.   Rehearing denied March 6, 1906.]

1. APPEAL AND ERROR.—*Constitutional Law.*—*No Decision on, When Avoidable.*—A constitutional law question in a case will not be decided where the case may be determined upon other grounds. p. 269.

2. MASTER AND SERVANT.—*Safe Place.*—*Making Place Safe.*— *Rule.*—The rule that the master must furnish the servant a safe place in which to work, is not applicable where the work of the servant consists in making such working place safe. p. 274.

3. SAME.—*Employers' Liability Act.*—*Negligent Order.*—*Making Place Safe.*—A general order given by a superintendent to two workmen to take down some joists used in a temporary work in the process of construction was not negligent within the meaning of the employers' liability act (§7083 Burns 1901, Acts 1893, p. 294, §1). p. 275.

4. SAME.—*Employers' Liability Act.*—*Special Order.*—A general order by defendant's superintendent to two workmen to take down some loose joists used in a temporary structure, and not directing how they should proceed, is not a special order rendering the master liable under §7083 Burns 1901, Acts 1893, p. 294, §1. p. 275.

5. SAME. — *Employers' Liability Act.* — *Assumption of Risk.* — Where plaintiff was employed to assist in repairing a building, in the course of which it became necessary to take down some joists in temporary use, and plaintiff and a fellow servant were directed to take same down, during which work a truss, on which one end of said joists rested, fell, injuring plaintiff, the master is not liable under §7083 Burns 1901, Acts 1893, p. 294, §1, such employe appreciating the dangers fully to which he was exposed. · p. 276.

6. SAME.—*"Exercise of Due Care."*—*Employers' Liability Act.*— A servant who, with another, was directed to take down some loose joists in temporary use, one end of which rested on a truss having no lateral supports, and who in taking same down moved such truss, causing it to fall and injure him, is not in the "exercise of due care" as required by §7083 Burns 1901, Acts 1893, p. 294, §1, such servant appreciating such danger. p. 277.

From Tipton Circuit Court; *B. F. Harness,* Judge *pro tem.*

Action by John Wall against the McElwaine-Richards Company. From a judgment on a verdict for plaintiff for $2,500, defendant appeals. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Reversed.*

*Shirts & Fertig, Beauchamp, Mount & Procter* and *E. E. Stevenson,* for appellant.

*William S. Christian, Ernest E. Cloe* and *Gifford & Gifford,* for appellee.

MONTGOMERY, J.—This action was brought in the Hamilton Circuit Court by appellee to recover damages for a personal injury sustained while in appellant's employ. The venue was transferred to the Tipton Circuit Court, and, upon appeal from a judgment rendered therein, this court held the original complaint insufficient. *McElwaine-Richards Co.* v. *Wall* (1902), 159 Ind. 557. An amended complaint, consisting of two paragraphs, was subsequently filed, and demurrers to the same were overruled. The issues were closed by an answer in general denial, and a trial by jury resulted in a verdict and judgment for appellee.

Appellant alleges that there was error in overruling demurrers to each paragraph of amended complaint, in overruling appellant's motion for judgment upon the answers of the jury to interrogatories submitted, notwithstanding the general verdict, and in overruling the motion for a new trial.

Both paragraphs of the amended complaint proceed upon the theory that a cause of action exists in appellee's favor by virtue of the provisions of the employers' liability act of March 4, 1893 (Acts 1893, p. 294, §1, §7083 Burns 1901). Appellant's counsel challenge the constitutionality of that act so far as it relates to private corporations. The amendments to the original complaint obviated the defects pointed out by this court, and if the provisions of the act in question are valid as against appellant, a cause of action is exhibited in each paragraph of the amended complaint. But assuming the constitutional validity of the act and the sufficiency of the complaint, upon the facts found by the jury no cause of action exists in appellee's favor, and we will therefore not discuss the complaint further or determine the constitutional question suggested. *Hodges* v. *Standard Wheel Co.* (1899), 152 Ind. 680.

The jury, in answer to interrogatories, found the following facts: Appellee was employed by the appellant to do general work in and about the construction of an addition to the building in which it carried on the business of a foundry, and the work he was doing at the time he was injured was in the line of his employment, and of the same general nature as the other work in which he had been engaged. He had been at work under said employment in and about the place where he received his injury for eight and one-half days immediately prior thereto. There was no agreement that he should be assigned to any particular service or duty. He was a man of mature years, of ordinary intelligence, strength and agility, and in full possession of all his mental faculties, physical powers and senses. During his employment he had been engaged in tearing down a part of the wall of appellant's building where the addition was to be constructed, and in erecting posts or props to support the roof while said wall was removed, in placing posts in position, in nailing on sheathing and in taking down scaffolds in connection with the work in which masons and carpenters were engaged. He was injured by the falling of a truss which was in process of construction in the progress of said work, said truss consisting of a chord nineteen feet long, eight inches wide and ten inches thick, made of wood, and of two braces framed on top of said chord, and extending upward from each end thereof, meeting at the center in the form of a gable about seven feet high, with two other braces framed on said chord near the center, and extending upward to meet said other braces at right angles, with bolts or iron rods reaching from the lower part of said chord to the points of union of said braces above—the whole weighing about seven hundred pounds. The chord of said truss was about ten feet from the ground, its west end rested on a brick pilaster in the wall of the building, and the east end on a post of the same dimensions as said chord, and said truss, as constructed,

stood at right angles to said brick wall. A similar truss had been constructed and raised on like supports, the same distance from the ground, sixteen feet south of said truss, and had been securely fixed by other framework, which had been placed in position immediately south of it and attached thereto. A temporary scaffold had been constructed for workmen engaged in putting in the braces and rods of said chord, by placing joists two inches thick and ten inches wide, one on top of another, and extending from the chord of said south truss to the chord of said north truss, and no timber or framework other than said post and said joists touched said north truss. There was another post immediately east of the one on which the east end of said chord rested, which extended upward and against the east end of said chord, and no lateral brace had been provided to hold said north truss in an upright position prior to said injury. There was one course of brick on each side of the end of said chord, resting on said pilaster up to the top of said chord, forming a recess in which the end of said chord rested, open at the top so that the end of said chord could be seen from above. There was no roof or covering over said north truss, all of the parts thereof, except so much of the west end as extended into the brick recess and the east end abutting against said higher post, and so much of the bottom of the chord as rested on said post beneath, were exposed to view, and the fact that said truss was not provided with any lateral brace was readily to be seen by any one near the same or on said joists. Said truss had a sufficient bearing and support to maintain it in an upright position as it was constructed and stood, without danger of falling, unless it was pushed or pulled over by some lateral force, and said trusses were intended to support the floor of an elevator coke bin which had not then been constructed.

Just prior to the time appellee was injured appellant's superintendent, Hinds, directed him and John McClain,

a colaborer, to take down said joists, but did not give appellee any particular instruction as to the manner in which said work should be done, or direct what part of said work should be done by appellee or by said McClain. After receiving such order appellee climbed upon said joists at the north end next to said north truss, and proceeded to push said joists endways, one at a time, southward over said south truss to his assistant, taking a position with one foot on the chord of the north truss and the other on the end of one joist resting on said chord, which made it impossible for him to stand in an upright position. The weight of appellee's body and of the joist which he was so lifting pulled said truss over to the south, and caused the same to fall toward him, and thereby caused the injury of which he complains. No one directed appellee to stand in the position in which he was standing at the time said truss fell, and neither appellant nor its superintendent had any knowledge before the injury of the manner in which appellee was proceeding to remove said joists, or of the position in which he was standing. Appellant employed R. M. Hinds, a contractor and builder, to prepare plans for and to construct said addition to said foundry, and agreed to furnish the material therefor, and to pay said Hinds by the day for said work, and said Hinds was given full charge of said work, and, in accordance with said contract and arrangement with appellant, employed appellee. No officer or agent of appellant's except said Hinds took any part in directing the laborers or the manner of framing or putting up any part of said addition. The work of putting up said building was not unusually dangerous, and there was nothing extraordinary or complicated about the method of framing or putting up said structure. At the time of giving directions to take down said joists, Hinds knew said truss had no lateral brace, but no one else knew that fact except the carpenters and laborers who built the same. Appellee did not know, before it began to fall, that said truss was

not braced, and made no examination as to such fact, but by inspecting the same could have discovered that said truss had no lateral brace. There was nothing about the construction of said truss or chord that a man of ordinary intelligence could not understand by examining the same, and nothing to prevent appellee from seeing that said truss had no lateral brace, if he had looked. Appellee did not know said truss was liable to fall if subjected to considerable lateral strain or weight, but there was nothing except lack of mechanical knowledge to prevent him from readily discovering such fact if he had looked. Hinds knew Wall lacked mechanical knowledge, and appellee did not know said truss was unfinished, but knew said joists were laid loose on said chord and the chord to the south. Said joists were laid in four rows, two in each row and one on top of the other, so near together that appellee could stand on the joists in one row and reach over and lift the end of the joist in the next row, and such joists as appellee did remove he removed in this manner, and so removed two or three without taking hold. of said truss. Appellee got upon the east row of joists, near the truss which fell, by standing on a pile of pig-iron under the same, taking hold of said east row, and swinging or pulling himself up with his arms. If the lower joist of the east row had been left till the last it could have been removed by appellee by standing on said pile of pig-iron, and lifting the north end off of said truss and carrying it to the ground, and if all except the lower joist on the east row had been removed in the manner appellee took down the first three, the evidence does not show that said truss would probably have fallen; but appellee put the joists down in the best and quickest manner. Said injury occurred on October 26, 1899, in the daytime, when it was light and objects could be distinctly seen.

The first paragraph of the amended complaint alleges that appellant's superintendent carelessly and negligently ordered and directed appellee to go upon said chord of

wood; that the same was a dangerous and unsafe place; and that appellant had carelessly, negligently and knowingly constructed said chord and left it in such insecure condition.

The second paragraph avers that appellant's superintendent carelessly and negligently ordered appellee to throw down some planks or boards, one end of which rested on said chord; that in pursuance of such order he went upon said chord; that the same was a dangerous and unsafe place in which to work, and had been constructed and left in a careless and negligent manner. It is thus manifest that appellee's right of recovery is grounded upon his obedience to a specific order of the master, which exposed him to unusual danger without previous warning of his peril, or subsequent precaution for his safety.

It is alleged that the place in which appellee was required to work was unsafe and dangerous. It appears from the facts found that the only danger surrounding
2. the place in question grew out of the incomplete condition of the structure upon which appellee was working. The truss had not yet been attached to the overhead structures designed, for the reason that the construction had not progressed to that point. The truss appears to have been well constructed, of good materials, and sufficiently supported to hold it upright, and serve the purposes for which it was primarily intended. The work of constructing an addition to appellant's foundry was clearly of such a character as to make it inevitable that as it progressed the environment of the servants engaged therein must undergo frequent changes, and it was not the duty of the master to be continuously present to warn and protect such servants against the dangers resulting from those changes. There was no latent danger inherent in the place in which, or appliances with which, appellee was required to work, but only such as usually pertained to the character of the work which he was employed to perform, and such

as arose from the manner in which he discharged his ordinary duties. It is well settled that the rule requiring the master to furnish his servant a safe place in which to work does not apply when the work of such servant consists in making safe the place and conditions of which complaint is made. *Evansville, etc., R. Co.* v. *Maddux* (1893), 134 Ind. 571; *Bedford Belt R. Co.* v. *Brown* (1895), 142 Ind. 659; *Kerner* v. *Baltimore, etc., R. Co.* (1897), 149 Ind. 21; *Stuart* v. *New Albany Mfg. Co.* (1896), 15 Ind. App. 184; *Baltimore, etc., R. Co.* v. *Welsh* (1897), 17 Ind. App. 505; *Southern Ind. R. Co.* v. *Harrell* (1904), 161 Ind. 689, 63 L. R. A. 460, and cases cited. See, also, *LaFayette Bridge Co.* v. *Olsen* (1901), 108 Fed. 335, 47 C. C. A. 367, 54 L. R. A. 33 and note.

It is manifest, therefore, that if appellee was placed in the position which he assumed at the time of receiving his injury in obedience to a special order within the meaning of the statute in question, such order was not a negligent one.

3.

The jury expressly found that appellee at the time he was injured was merely obeying a general direction of superintendent Hinds, given to him and McClain, a colaborer, to take down the joists, and that no restrictions were placed upon the manner of procedure, and no particular part of the work assigned to either of them. The further fact is found that this work was in the line of his employment and of the same nature as the work in which he had been engaged. The rule that a servant may recover of the master for an injury resulting from the negligence of one to whose order or direction at the time of the injury he was bound to conform and was conforming, only applies where such order is a special one, although it may be within the general scope of his employment.

4.

The following paragraph from the opinion in *Stuart* v. *New Albany Mfg. Co., supra,* is peculiarly applicable: "It

can not well be seen how the appellant could have been engaged in any special work, in assisting with the erection of the frame, when he had undertaken to perform just such work, for it must be conceded, we think, that the work referred to was a part of the employment of the erecting and construction of the building. True, he says he was neither a carpenter nor a builder, but it required neither of these to discharge the duty to which he says he was assigned."

In the case of *Southern Ind. R. Co.* v. *Harrell, supra,* this court, in construing the second subdivision of the employers' liability act (§7083 Burns 1901, Acts 1893, p. 294, §1), said: "That subdivision was not intended to create a liability based on an order or direction, where such order or direction was as broad as the whole service, and where the injured servant, without the compulsion of an order or direction from one whose order or direction he was required to obey, was at the time governing himself according to his own judgment as to what was proper."

It was appellee's duty under his employment to do such work as that in which he was engaged when injured, without special direction. The place in which he was working, as already shown, was not unsafe, within the usual meaning of that term in actions between master and servant, and appellee was left free to exercise his own judgment as to the best and safest method of removing the joists. The order to which he was conforming at the time of receiving his injury was not such a special order as made the master an insurer of his safety, or such as devolved upon the master the duty of keeping constant watch over the servant lest some accident occur from the manner in which he performed the work assigned.

It is expressly found by the jury that there was nothing about the construction of the truss or chord that a man of ordinary intelligence could not understand, and that appel-

lee could have readily discovered that the truss was liable to fall, if subjected to any considerable lateral strain, if he had looked at it. Appellee was chargeable with knowledge of those things which by the use of his senses he could readily have learned. He is shown to be a man of mature years, of ordinary intelligence, and in full possession of all his faculties. A servant thus endowed must exercise his natural senses for his own safety, and, failing so to do, must suffer the consequences. This rule of law has long existed for the mutual benefit of both master and servant. A contrary doctrine, making the master liable to a servant careless of his own safety, would defeat its aim, and operate most harshly upon the unfortunate class invoking its protection.

The facts specially found make it clear that appellee's injury was caused in part by his own indifference to his surroundings, and it can not therefore be said that 6. he was in the exercise of due care at the time of receiving such injury. *Day* v. *Cleveland, etc., R. Co.* (1893), 137 Ind. 206; *Brazil Block Coal Co.* v. *Hoodlet* (1891), 129 Ind. 327; *Baltimore, etc., R. Co.* v. *Hunsucker* (1904), 33 Ind. App. 27.

Appellant's motion for judgment upon the answers of the jury to the interrogatories, notwithstanding the general verdict, should have been sustained, and for the error in overruling such motion the judgment must be reversed.

The judgment is reversed, with directions to sustain appellant's motion for judgment in its favor upon the interrogatories to the jury and the answers thereto, notwithstanding the general verdict.