## ARDMORE OIL & MILLING CO. v. BARNER.

No. 8117—Opinion Filed March 4, 1919.

Rehearing Denied April 15, 1919.

(179 Pac. 932.)

(Syllabus.)

1. **Master and Servant—Safe Place for Work—Tools and Appliances—Competent Fellow Servants.**

It is the duty of a master to exercise ordinary care and prudence in providing servants with a reasonably safe place in which to work, reasonably safe tools and materials with which to work, and reasonably safe and competent fellows servants with whom to work; and a failure in one or more of such duties will render the master liable for damages proximately resulting from such failure.

2. **Same—Negligence of Foreman—Liability for Injury.**

Where a foreman has charge of a master's work and is authorized so to do and does direct such work and the servants are required to and do work under the directions and orders of such foreman, the master in such case is liable for injuries done to his servant by reason of negligence of such foreman.

3. **Instructions.**

Instructions of the court and each and

every separate paragraph thereof have been examined, and it is found that no single paragraph of the court's charge contains such error as would justify reversal of this judgment, nor such error as would likely do substantial injustice to plaintiff in error, and that the charge taken as a whole constitutes a reasonably clear and correct statement of the law applicable to the facts in the case.

### 4. Damages—Excessive Damages—Personal Injury.

Where a servant receives serious and permanent injuries as the proximate result of the master's negligence, and where there is evidence tending to show that he was a strong, healthy man and able to do manual labor before the injury, and that he was rendered unable to do any work for a period of six months or more immediately following the injury, and that during such time he was under the constant treatment of a physician, and that more than a year thereafter he was still suffering from the effects of such injuries, and the evidence tended to show that such injuries were serious and permanent and of such character as to render the servant unable thereafter to perform manual labor such as he had been able to perform before receiving the injuries, and he brings suit for $5,290, and the jury after hearing all the evidence returns a verdict for $1,540, such verdict cannot be said to be excessive nor to have been actuated by passion and prejudice.

Error from District Court, Carter County; W. F. Freeman, Judge.

Action by I. S. Barner against the Ardmore Oil & Milling Company for damages. Judgment for plaintiff, and defendant brings error. Affirmed.

J. S. Ross and L. D. Threlkeld, for plaintiff in error.

Johnson & McGill, for defendant in error.

HARRISON, J. This action was begun in the district court of Carter county, March 6, 1915, by I. S. Barner, defendant in error, against the Ardmore Oil & Milling Company, for compensation in damages for injuries alleged to have been caused by the negligence of said company.

It appears from the record: That on March 11, 1914, defendant in error was and for some time prior had been, in the employ of plaintiff in error, Ardmore Oil & Milling Company. That, in the forenoon of said date, defendant in error, and one Bob Phillips, and one T. H. Fuller, the foreman, under whose direction they were working, were engaged in loading a car with sacks of cotton seed meal, the car having been placed right along by the mill platform. Barner

was engaged in trucking the sacks into the car, while the foreman and Phillips were engaged in loading the truck and in pulling down the sacks from the rick where they were stacked. That they had finished the rick of sacks on the platform, but lacked some of having enough to fill the car, so the foreman and Phillips went into another room where there was a stack of sacks, which according to Phillip's testimony was 15 or 20 sacks high, 4 sacks wide, and possibly 30 feet long, making the stack about 15 feet high. Phillips and Fuller, the foreman, were engaged in prying out sacks from the bottom, at one end of the stack, so as to cause it to fall, thereby enabling them to get at the sacks more readily. While thus engaged Barner came in with his truck to get another load, and just as he came in the stack started to fall, and did fall in the opposite direction to which Fuller thought it would fall, and in falling several sacks struck Barner on the head and body, knocking him down and causing the injuries for which suit was brought.

Barner sued for $5,290. The issues of fact were submitted to a jury under instructions from the court and a verdict returned in favor of Barner in the sum of $1,540. Whereupon the court rendered judgment against the milling company for the sum of $1,540. Motion for new trial was presented and overruled, and the milling company appeals to this court for review.

The plaintiff in error presents six separate specifications of errors, which, however, are grouped and presented in plaintiff in error's brief under three propositions:

(1) That no primary negligence is shown by the testimony.

(2) That the court erred in refusing instruction No. 1 requested by plaintiff in error, and in giving instructions 4, 5, 6, 7, and 9 in the court's charge.

(3) That the judgment is excessive and appears to have been given under the influence of passion and prejudice.

As to the first proposition, the undisputed facts are that they were loading the trucks from a stack or rick of sacks about 15 feet high. This stack was harmless as long as it remained standing, and at least until it fell upon or was pried over onto some one se: then it became dangerous as shown by the results. If it had been no more than 6 or 8 feet in height, then the sacks could have been pulled down and loaded without

any danger to the employes doing the work and without any probability of any one getting injured thereby. Therefore by stacking them up to the height of 15 feet the place in which Barner was required to work was rendered dangerous in the event this stack would fall over or be pried over onto him, and the undisputed facts are that it was pried over and fell onto him and injured him.

The further undisputed facts appear that, if the sacks had been pulled from the top instead of from the bottom, the rick would have been less likely to fall, and it further appears that it was intentionally pried over under the direction and with the assistance of the foreman himself. It appears also that it fell in the opposite direction to which the foreman had calculated it would fall. He expected the sacks to roll down at the end, when, instead, they fell over toward the side. Barner had just come in with his truck and stopped at the side and about 5 feet from the rick. Just as he stopped, the foreman hollered, "Look out!" and under the testimony of both Barner and Phillips the rick fell and struck him before he had time to move; in fact, it was falling when the foreman told him to look out. Barner fell with his back across some two by fours, and according to Phillips' testimony was rendered helpless and unconscious, and four sacks on top of him; at least, Phillips said he pulled four sacks off of him. Hence, when analyzed, a set of circumstances was presented which combined to cause the injury to Barner: One, the rick being so high as to be likely to fall and dangerous in case it should fall; the other, that it was caused to fall under the direction and miscalculation of the foreman. Either of these elements which combined to cause the injury would have been avoided by the exercise of proper caution on the part of the milling company, and Fuller, through whom the milling company acted. This constituted a lack of proper care on the part of the milling company in stacking the sacks so high as to become dangerous, and a lack of prudence on the part of its foreman in prying the sacks from the bottom in such manner as to cause the rick to fall over onto Barner and therefore constitutes a negligence which resulted in Barner's injuries.

It was decided by this court in Ft. Smith & W. R. Co. v. Knott, 60 Okla. 175, 159 Pac. 847:

"As between master and servant, three elements are essential to constitute 'actionable negligence,' when the wrong charged is not willfully and wantonly done, viz.: (1) The existence of the duty on the part of the master to protect the servant from the injury; (2) failure of the master to perform that duty; (3) injury to the servant resulting from said failure."

In Prickett v. Sulzberger & Sons, 57 Okla. 567, 157 Pac. 356:

"It is the undelegable duty of the master to exercise ordinary care to provide the servant a reasonably safe place to work, reasonably safe tools and materials with which to work, and reasonably safe and competent fellow servants with whom to work, and a failure in one or more of these duties will subject the master to liability for all damages proximately resulting therefrom. * * *"

In Ponca City Ice Co. v. Robertson, 67 Okla. 86, 163 Pac. 1111, this court said:

"It was the duty of defendant to furnish deceased with a reasonably safe place in which to work, and to maintain said place in a reasonably safe condition, and in the discharge of this duty it was held to the exercise of that degree of care which an ordinarily prudent person would exercise under like circumstances   Sulsberger & Sons Co. v. Castleberry, 40 Okla. 613, 139 Pac. 837; C., R. I. & P. Ry. Co. v. Townes, 43 Okla. 568, 143 Pac. 680; Interstate Comp. Co. v. Arthur [53 Okla. 212], 155 Pac. 861."

In Riter-Conley Mfg. Co. v. O'Donnell, 64 Okla. 229, 168 Pac. 49, a subdivision of paragraph 4 of the syllabus is as follows:

"It is not only the duty of the master to use ordinary diligence to furnish the servant a reasonably safe place in which to work, but also to use reasonable diligence to maintain the place in such condition. The duty is a continuing one, and it was not error for the court to so instruct the jury."

Hence with the foregoing principles of law well settled by this court, it is evident, under the facts in the case at bar, that the milling company owed a duty to its employe, said duty consisting in the exercise of reasonable care and prudence in providing a safe place in which to work, a safe means by which to work, and a safe and ordinarily prudent foreman under whom to work. It is equally evident, under the facts in this case, that the place in which Barner was working was not safe. He was severely and permanently injured, which injury was the proximate result of the conditions and circumstances under which he was working, conditions and circumstances brought about by lack of ordinary prudence and caution on the part of the milling company, and due to no fault whatever of his own; it appearing

from the record that Barner had no knowledge of the danger and received no warning of same until it was too late to escape.

Under plaintiff in error's first proposition, it is contended also that T. H. Fuller was not a vice principal, and therefore the milling company was not liable, such contention being based in the main on the assumption that he was not a superintendent; that he did not hire and discharge employes. The testimony, however, shows that he did sometimes employ laborers and sometimes discharge them, but most always sent them to the superintendent. But aside from this testimony, if it were a fact that he never employed any laborer and never discharged any, and had no authority to hire or discharge any, or that he was forbidden to exercise any such authority, the fact remains undisputed that he was foreman of the work in charge and directed the manner of the work, and that the master itself, the milling company, spoke through him in giving directions to the laborers. This made the master liable for injuries resulting from negligence or carelessness on the part of the foreman.

The second contention is:

"The court erred in failing to give defendant's requested instruction No. 1, and in giving to the jury instructions numbered 4, 5, 6, 7, and 9."

The requested instruction No. 1, referred to above, was that the court instruct the jury to return a verdict in favor of the milling company. This instruction was properly refused.

We have examined the entire charge of the court and each and every paragraph thereof, and it is our opinion that no single paragraph of the court's charge contains such error as would justify reversal of this judgment, nor such error as did substantial injustice to plaintiff in error, and that the charge taken as a whole constitutes a substantially clear and correct statement of the law applicable to the facts in the case.

Plaintiff in error's third contention is that the judgment is excessive and appears to have been given under the influence of passion and prejudice. This contention is not tenable. In the case of H. C. Ferris and Alexander New, Receivers of the Missouri, Oklahoma & Gulf Railroad Company. Plaintiffs in Error, v. B. F. Shandy, Defendant in Error, 71 Okla. 35, 174 Pac. 1060, this court said:

"The rule for determining whether damages awarded are excessive is that they must be so large as to strike mankind at first blush as being beyond all measure unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, and corruption. In short, the damages must be flagrantly outrageous and extravagant, for the court cannot draw the line, having no standard by which to ascertain the excess. C., R. I. & P. R. R. Co. v. DeVore, 43 Okla. 534, 143 Pac. 864 [L. R. A. 1915F, 21]."

Suit was brought for $5,290; the verdict was for $1,540. The evidence showed that four sacks, weighing 100 pounds each, fell from a height of 15 feet; that is 9 feet above the head of Barner, supposing him to have been 6 feet high, which does not appear from the record. It is not unreasonable that 400 pounds falling a distance of 9 feet upon the top of a man's head and shoulders would cause serious injuries. Besides, the testimony was that he was unconscious at the time the sacks were pulled off of him, and until in the afternoon after he had been taken home.

Dr. Walter Hardy testified that he was called to see the defendant in error soon after the injury; that he made several visits, some six or seven visits while he was yet confined to his bed; that afterwards the defendant in error quite often visited his office to get prescriptions and treatment and complained of trouble with his kidneys and suffering in the small of his back; that some two or three months later, while yet treating him for pain in his back and kidneys, upon examination he found blood in the urine. He also testified, in answer to the question whether or not Barner would be able to do manual labor, that he would not.

The defendant in error testified that he was a strong, healthy man and able to do manual labor before the injury; that it was about six months after the injury before he was able to do any kind of work; that he was still unable to do manual labor and was still suffering from the injuries.

Under such circumstances, we think the verdict was reasonable. The judgment is affirmed.

All the Justices concur, except KANE, J., who was not present.