## DECATUR v. CHAS. H. TOMPKINS CO.

Court of Appeals of District of Columbia.

Submitted February 7, 1928. Decided April 2, 1928.

No. 4566.

1. **Master and servant** ⟜101, 102(1)—General rule is that employer must furnish employees reasonably safe place to work.

General rule is that employer is bound to furnish employees with reasonably safe place in which to work.

2. **Master and servant** ⟜115(1)—Employer erecting building held as matter of law not liable for carpenter's injury from stepping on nail.

Employer, engaged in erecting building, *held,* as matter of law not liable for injury to carpenter from stepping on nail, since general rule requiring employer to furnish safe place to work has limited application in construction of buildings, and carpenter assumed risk of nails and loose pieces of lumber lying on ground as part of contract of employment.

Appeal from the Supreme Court of the District of Columbia.

Action by William F. Decatur against the Charles H. Tompkins Company. Judgment for defendant, and plaintiff appeals. Affirmed.

W. E. Leahy, O. H. Osterman, and E. B. Sullivan, all of Washington, D. C., for appellant.

E. L. Jones, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and BLAND, Judge of the United States Court of Customs Appeals.

MARTIN, Chief Justice. An appeal from a judgment entered upon a directed verdict for the defendant, in a suit for damages for personal injuries suffered as alleged by plaintiff by reason of the negligence of defendant.

The defendant, Charles H. Tompkins Company, is a corporation engaged in the business of erecting buildings of various kinds, and at the time of this occurrence it was constructing a large concrete warehouse in the city of Washington. The plaintiff, Decatur, is a carpenter by trade, of many years' experience, who was hired by defendant to work in and about the building while under construction. The building is located at the corner of Fourth and T streets, N. E.; upon the T street side it is bounded by an areaway about 8 feet deep and about 5 feet wide; next to this there is an embankment about 8 to 10 feet in width, extending between the area and T street; and next to the embankment, and parallel with it, is a bridge in T street extending across certain railroad tracks intersecting the street at that point. At the time in question the building was but partly finished, and work of various kinds was still in progress upon it. A few days before the accident the plaintiff had placed his carpenter's trestles upon the embankment, and was engaged in constructing boxlike wooden forms into which cement was to be poured so as to form blocks for use in constructing the retaining wall of the area. At the same time similar forms were being constructed by other workmen and used for like purposes upon the upper floors of the building. The boards composing such forms were fastened together with nails, and after the cement in them hardened the boards would be knocked apart and used again in making other forms. It often happened that the ends of the boards would be sawed off and rejected as scrap, and the small pieces with nails still protruding from them would be thrown from the upper floors to the ground,

many of them falling upon the embankment where the plaintiff was working. When this was done a warning would be shouted from above to those working below, so that they might get out of the way of the falling scrap. Plaintiff testified that "the scrap stuff they threw all around the building wherever it would fall. That is on all buildings. It is bound to be there, around the side of the building and around the floor of the building, he knew that"; also that, "of course, there were loose pieces of lumber all around the building during the course of construction, and had to be wherever a concrete building was being constructed." The plaintiff saw the boards thrown out in that manner on the morning of the accident, before he was hurt. After the plaintiff had worked for several days upon the embankment, he was sent by the foreman to the Fourth street side of the building to carry on certain work there. The work at that point was finished within a few days, and plaintiff then returned by the foreman's orders to continue the work on the area forms. When plaintiff returned he found the area cleaned out, and a floor laid there. The fallen dirt had been cleaned from off the floor and thrown out upon the embankment. The bank looked clean, and plaintiff set his trestles at about the same place as before, and stepped back to pick up some lumber which was about 6 feet away. In doing so he stepped upon a nail which protruded from a piece of board lying there covered by the fresh dirt. Plaintiff did not see the board before he stepped upon it, nor did he see any scrap lumber at the place where he had located his trestles, but, after he pulled the nail out of his foot, he looked to see the condition of the embankment, and found that a lot of scrap lumber, maybe a truck load or more, was lying there partly covered up by the fresh dirt. The nail caused a festering sore in plaintiff's foot, inflicting great injury and loss upon him, for which he sought judgment. At the close of plaintiff's testimony, however, the lower court directed a verdict against him.

[1, 2] We think this ruling was right. It is true that in general an employer is bound to furnish his employee with a reasonably safe place in which to work. But in the erection and construction of buildings this rule can have but a limited application; for it must often happen that the dangers of such work are open and obvious, and hence that the risk of accident is assumed by the employee. Walaszewski v. Schoknecht, 127 Wis. 376, 106 N. W. 1070. This is especially true

where the danger to which the employee is exposed is merely transitory, due to no fault of plan or construction, and where the environment of the employee must necessarily undergo frequent changes. Armour & Co. v. Dumas, 43 Tex. Civ. App. 36, 95 S. W. 710. It has been said that "the obligation of a master to provide reasonably safe places and structures for his servant to work upon does not extend to buildings in process of construction, or of demolition or dismantling, where the successive temporary conditions through which such structure must pass in such operations must from the very nature thereof be dangerous." 39 C. J. p. 351. In Armour v. Hahn, 111 U. S. 313, 318, 4 S. Ct. 433, 434 (28 L. Ed. 440), it is said that "the obligation of a master to provide reasonably safe places and structures for his servants to work upon does not impose upon him the duty, as towards them, of keeping a building, which they are employed in erecting, in a safe condition at every moment of their work, so far as its safety depends upon the due performance of that work by them and their fellows."

These principles preclude a recovery by plaintiff in this case. The condition from which plaintiff's injury arose was a well-known incident of the work on and about the building, and the plaintiff was fully aware of that fact. He knew that board ends with nails projecting from them were often thrown upon the embankment from the upper floors of the building, and he had seen this happen upon that same morning before the accident occurred. He states that the scraps were partly covered by the fresh dirt, and that he saw none about his trestle, but after the accident happened he noticed many such scraps scattered "all around" upon the embankment, only partly covered up with dirt. Various other points are presented by the appellees, but we need not discuss them, for under the circumstances disclosed by plaintiff's testimony it must be held that he assumed the risk of such a condition as this as part of his contract of employment. See Schneider v. American Bridge Co., 31 App. D. C. 420; Anderson v. Smith, 35 App. D. C. 93; Spates v. Wells Brothers, 43 App. D. C. 555; Kreigh v. Westinghouse & Co. (C. C. A.) 152 F. 120, 11 L. R. A. (N. S.) 684; McElwaine-Richards Co. v. Wall, 166 Ind. 267, 76 N. E. 408; Beique v. Hosmer, 169 Mass. 541, 48 N. E. 338; Walton v. Bryn Mawr Hotel Co., 160 Pa. 3, 28 A. 438.

The judgment of the lower court is affirmed, with costs.