**HEALING WATERS, INC., a Corporation, Plaintiff in Error,**

v.

**Harold H. McCRACKEN, Defendant in Error.**

**No. 38580.**

Supreme Court of Oklahoma.

March 1, 1960.

Rucker, Tabor & Cox, Bryan W. Tabor, O. H. (Pat) O'Neal, Tulsa, for plaintiff in error.

G. C. Spillers, G. C. Spillers, Jr., Tulsa, Richard J. Carstensen, Billings, Mont., for defendant in error.

WILLIAMS, Vice Chief Justice.

Healing Waters, Inc., plaintiff in error, hereinafter referred to as defendant, undertook to conduct a series of tent revival meetings in Billings, Montana, under the sponsorship of several local churches.

Collins T. Steele, defendant's equipment manager, arrived in Billings prior to the scheduled meetings. Steele, with the assistance of the local pastors, called for volunteers from the congregations to prepare the grounds and to construct a sanitation building. Raymond Weber, a carpenter and building contractor, volunteered his services and was given charge of building the comfort station.

This building, 20 feet by 40 feet by 9 feet, was constructed of 4 feet by 8 feet plywood panels reinforced by 2 x 4s on the sides and in the center. These panels were placed on end and nailed to the base plate and top plate, both consisting of two 2 x 4s. In addition the panels were nailed to the adjacent panels and cross braced on the inside. The rafters, 2 x 8s standing on the edge, and run cross-wise to the length of the building, were attached to the top plate by "toe nailing"—nails being driven into the sides of the rafter at an angle through the rafter into the top plate. Said plywood panels were then nailed flat on top of the rafters. Roofing material was laid on the plywood.

. After the building was completed, county officials required that it be moved off of a right of way easement. Steele and the pastors again called for volunteers to move the building. Plaintiff, a salesman, volunteered to help in this work.

Steele attempted to skid the building by pulling it with a truck-tractor. This method was abandoned when the building went over a slight rise in the ground and sagged at the ends, causing a crack in one wall. It was then decided to dismantle the building and re-assemble it in the new location.

Weber, the "straw boss", assigned tasks of removing the roofing materials, pulling nails from the roof panels and other dismantling jobs. Plaintiff and Weber were to lift the loosened roof panels and carry them to the north end of the building and lower them to the ground.

After several roof panels had been removed, plaintiff stepped out on an exposed rafter to tilt a panel which extended beyond the panels still in place, so Weber could pick up the other end next to the panels still in place. As plaintiff started forward, holding one end of the panel being removed, a rafter "rolled" when he stepped on it. Plaintiff fell to the floor, landing on top of a rafter which fell with him, injuring his back.

Plaintiff filed this action for injuries sustained as a result of this fall. Verdict of the jury was for plaintiff for $76,000.00. Judgment thereupon was duly entered. Motion for new trial was overruled and defendant appeals.

At the trial, the parties stipulated as follows:

"That the said Collins T. Steele, acting for the defendant corporation and within the scope of his employment and authority, took charge of directing and supervising the labors of the voluntary workers, including the plaintiff, and these and the plaintiff submitted to the supervision and direction of the said Steele and were so acting at the time of the plaintiff's injury complained of.

"That at the time of his injury the plaintiff was engaged in assisting dismantling the comfort station or building which the defendant corporation maintained to use in connection with the revival meeting as a sanitary facility. That at that time another worker named Raymond Weber had been

designated as 'straw boss' of the dismantling of the comfort station, and the plaintiff was working under his immediate supervision and direction, while the said Weber in turn was acting under the supervision and direction of the said Steele."

Defendant's first three assignments of error are based on the proposition that plaintiff failed to establish primary negligence on the part of defendant.

Defendant relies on Kansas City Bridge Co. v. Gravitt, 188 Okl. 30, 105 P.2d 767, and cases from other jurisdictions. See Decatur v. Chas. H. Tompkins Co., 58 App. D.C. 102, 25 F.2d 526, 60 A.L.R. 402, for the rule:

"If the master exercises ordinary care to provide a reasonably safe place for the servant to work, but during the progress of the construction work, due to the changing conditions incident thereto, and not because of the master's negligence, a dangerous condition arises, causing injury to the servant, the master is not liable. The servant assumes the risks incident to the constantly changing condition of the uncompleted structure, as these risks are ordinarily incident to the work he has undertaken. 39 C.J. 711. However, this exception to the rule does not apply when the danger could have been obviated by the exercise of ordinary care on the part of the master." [188 Okl. 30, 105 P.2d 771.]

In the present case there was uncontradicted evidence that the work of dismantling this building was started on all parts of the building simultaneously. Braces on the inside of the wall were being removed while the roof was being taken off. As soon as the roofing material was rolled back, the nails in the roof panels were pulled and the roof panels taken off. When the rafters were exposed, they were taken down. There was conflicting evidence as to whether the rafters were "sway braced" to prevent rolling or turning on their sides. There was uncontradicted evidence that the two rafters involved in plaintiff's fall did not have braces attached to them at the time of the accident. It was also uncontradicted that plaintiff was not warned of any dangers not apparent to him or which could not be discovered by use of ordinary care on his part.

In Chicago R. I. & P. Ry. Co. v. Schands, 57 Okl. 688, 157 P. 349, we said:

"Although a servant assumes the known and obvious increased hazards of a work, which, by reason of the character of the work, becomes more dangerous as the work progresses, a master in such case is not absolved from any duty to furnish a safe place to work, but must use ordinary care to make the place where his servant works as safe as it can be made under the conditions of the work to be performed.

"We are not willing to subscribe to the doctrine that because an employment is known to be dangerous the master is absolved from any duty to exercise reasonable care to furnish a safe place to work. Rather the master's duty is to exercise ordinary care to make the place where his servant works as safe as it can be made under the conditions of the work to be performed."

This is the general rule, 56 C.J.S. Master and Servant § 210, and followed in National Value & Mfg. Co. v. Wright, 205 Okl. 565, 240 P.2d 769.

In S. H. Kress & Co. v. Nash, 183 Okl. 544, 83 P.2d 536, 537, 538, this Court held:

"The fact that there may be dangers connected with the general class of work the servant is directed to perform, which ordinary care on the part of the master cannot remove, does not excuse him from liability for injuries due to dangers which the exercise of ordinary care would remove."

Evidence of defendant's failure to so provide a reasonably safe place to work was sufficient to present to the jury the question

of whether or not defendant was negligent. Reviewing this evidence we are of the opinion that there is competent evidence to support the jury's verdict.

Defendant further argues that when an employee has more than one method of doing the work and he uses the more dangerous method, the employee assumes risk incident to the more dangerous method and the employer is not liable for the resulting injuries to the employee. Defendant contends that the trial court's refusal to give an instruction embodying this theory was error. This question was decided in S. H. Kress & Co. v. Nash, supra, in which we said:

"Defendant urges that it is entitled to certain instructions outlining its theory of the case, said theory being that the proximate cause of deceased's death was his disobedience of the orders given by the manager; that said disobedience constituted contributory negligence. The authorities cited from other jurisdictions on this point are not applicable in this jurisdiction for the reason that under the provisions of Section 6, Art. 23 of the Constitution, Okl.St.Ann.Const. art. 23, § 6, the defense of contributory negligence is a question of fact which at all times must be left to the jury. The jury alone can determine whether the facts as they find them to exist constitute contributory negligence and it is not error for the trial court to refuse to instruct the jury that a certain set of facts, if found to be true, constitute contributory negligence. Mascho v. Hines, 91 Okl. 295, 217 P. 856; St. Louis-S. F. R. Co. v. Russell, 130 Okl. 237, 266 P. 763; Southwestern Cotton Oil Co. v. Fuston, 173 Okl. 185, 47 P.2d 111. The trial court did not err in refusing the instructions requested by defendant. The record discloses that the jury was instructed upon the issues of negligence, proximate cause, contributory negligence, assumption of risk and measure of damages. Under the issues made by the pleadings and evidence other instructions would have been unnecessary and improper."

Defendant's final assignment of error and argument is that defendant is not liable in damages as plaintiff was injured by the negligent acts of a fellow servant, and refusal of the trial court to so instruct the jury was error. Defendant argues that suitable material was furnished for the job, and the plan and method was left to the discretion of the voluntary employee; and that the negligence, if any, in this case was that of a fellow servant, Barnsdall Oil Co. v. Ohler, 48 Okl. 651, 150 P. 98. We do not believe that this fellow servant rule is applicable to the present case.

It was stipulated by the parties that Steele was acting for defendant and within the scope of his employment. It was further stipulated that Weber had been designated as "straw boss" of the dismantling of the building and plaintiff and the others were working under his supervision and direction.

In Ardmore Oil & Milling Co. v. Barner, 72 Okl. 231, 179 P. 932, we held:

"Where a foreman has charge of a master's work and is authorized so to do and does direct such work and the servants are required to and do work under the directions and orders of such foreman, the master in such case is liable for injuries done to his servant by reason of negligence of such foreman."

After careful review of the record we find that there is competent evidence reasonably tending to support the verdict of the jury, and the instructions fairly state applicable law. The judgment based on such verdict will not be disturbed on appeal. Shelton v. Tapley, Okl., 329 P.2d 672.

Affirmed.

DAVISON, C. J., and HALLEY, BLACKBIRD, JACKSON, IRWIN and BERRY, JJ., concur.

WELCH and JOHNSON, JJ., dissent.