SELDEN-BRECK CONST. CO. *et al.* v. LINNETT.

No. 2596.   Opinion Filed June 10, 1913.

Rehearing Denied September 9, 1913.

(134 Pac. 956.)

1.  MASTER AND SERVANT—Injury to Servant from Elevator Accident—Question for Jury — Evidence. Where defendants were engaged in the construction of a ten-story building, and had for use in so doing an elevator intended primarily for hoisting freight from the lower to the upper floors, marked: "Dangerous; persons riding this elevator do so at their own risk"—but which the evidence reasonably tended to prove was so habitually disregarded by employees, with the knowledge and consent of defendants, as to render said warning nugatory as to them, and where L., an employee of defendants at work on said building, while descending thereupon was thrown therefrom, by the tipping of the elevator, and killed, and where, while the evidence was conflicting as to what caused the elevator to tip, there was evidence reasonably tending to prove that the same was the result of negligent construction in that its track was not properly braced, in consequence of which said elevator slipped from its guides and threw defendant out by a lateral motion, held that the evidence was sufficient to take the question of negligence to the jury.

2.  SAME—Prohibitory Rule — Abandonment — Instructions. The habitual disregard by employees of a notice which reads: "Dangerous; persons riding this elevator do so at their own risk"—posted on an elevator intended primarily for freight, with the knowledge of the master, may have the effect of waiving or abandoning the prohibitory rule evidenced thereby.

(Syllabus by the Court.)

*Error from Superior Court, Oklahoma County;*
*A. N. Munden, Judge.*

Action by Anna B. Linnett against the Selden-Breck Construction Company and others. Judgment for plaintiff, and defendants bring error. Affirmed.

*Buder & Buder, Geo. V. Reynolds,* and *J. S. Ross,* for plaintiffs in error.

*Du Mars & Vaught* and *R. E. Gish,* for defendant in error.

TURNER, J.   On January 18, 1910, the defendant in error, Anna B. Linnett, sued the Huckins Hotel & Office Building Company, Selden-Breck Construction Company, and the Reinforced Concrete Construction Company, in the superior court of Oklahoma county, in damages for personal injuries sustained by her husband, which resulted in his death.   Her petition, after alleging that on August 7, 1909, deceased, Paul H. Linnett, was an employee of the two construction companies, plaintiffs in error, while erecting a hotel and office building in Oklahoma City for said Huckins Hotel & Office Building Company, substantially states that defendants, for use in said building while so doing, erected temporary elevators, and used them for the purpose of transporting material and laborers from the ground floor to the upper floor of said building, which was ten stories high when completed; that the same were run at great speed, and that it was necessary for the protection of life and property that the same be done with great care; that while so employed it was the duty of deceased to assist in transporting material to the elevator on the ground floor, and to take it from the elevator on the upper floor, and in addition thereto to do such other work in connection with mixing, transporting, and placing concrete as he was directed to do by defendants; that the superintendent and various employees of defendants, including deceased, rode said elevator while engaged in such work, with the knowledge and consent of defendants, in going to and from their work on the upper floors; "that the elevator so used by the said Paul H. Linnett was defectively constructed, in that it was not sufficiently strong to carry the weight of a man or men and the loaded wheelbarrows, which it was used to transport from the lower floor to the upper floors and from the upper floors to the lower floor; further, that the said elevator was constructed of ordinary 2x4 timbers, and that the slide or guide on which the elevator worked up and down was a 2x4 piece of scantling, and when the elevator

was heavily loaded, the said 2x4 scantling would spring, and did spring so as to permit the slides of the pieces on the elevator which held said elevator in its proper place to slip from its slide or guide, and in doing so to tilt or topple over"; that on the day aforesaid, after deceased and another employee had finished work upon the upper floor, they took the elevator to go to the lower floor; that after descending some distance said elevator slipped from its slide or guide, swung out of place, titled over, and threw deceased therefrom to the lower floor, killing him instantly; that said elevator was the only. means of passing from the upper to the lower floor, except a ladder constructed on the outside of the building, dangerous to climb; that deceased at the time of his injury was exercising ordinary care, and that the accident which caused his death "was due solely to the negligence of the said defendants in the defective and negligent construction and maintenance and negligent and careless operation of said elevator," wherefore she prayed damages in a sum certain. Thereafter the cause was dismissed as to the Hotel Company.

Plaintiffs in error, here called defendants, after pleading a general denial and assumption of risks, contributory negligence, and that deceased was a fellow servant to the servant, if any, causing the injury, admitted their corporate existence, and alleged "that Linnett at no time had any right to be on the elevator, it having been constructed and at all times operated and maintained solely for the use and purpose of transporting freight and material from and to the various floors of the building, and that the defendants long before the accident had promulgated rules forbidding the use of the elevator for the transportation of employees, or other persons, and that these rules were in force at the time of the accident, and that the said Linnett had full knowledge at all times thereof; that in addition thereto there were large signs on the elevators warning all persons against riding thereon, and advising them that its use for the transportation of persons was dangerous, and that all of the risks in connec-

tion with the use of the elevator for the transportation of passengers were perfectly obvious and well known to Linnett at and before the time he endeavored. to use it at the time he was killed, and that in going on the elevator Linnett was a volunteer, acting in direct violation of the rules and warnings aforesaid, and in utter disregard of the knowledge above intimated, and that he thereby assumed the risks of all the dangers in connection with endeavoring to use the elevator as aforesaid, wherefore he could not recover." After reply filed, in effect a general denial, there was trial to a jury and judgment for plaintiff for $5,000, and defendants bring the case here.

It is assigned that the evidence was insufficient to take the case to the jury on the question of negligence, and hence that the court erred in overruling defendants' demurrer thereto. Resolving all material controverted questions of. fact in favor of plaintiff, on this point the evidence tends to prove: That on the day of the injury deceased was an employee of the defendant the Concrete Company, which, with the defendant the Construction Company, was erecting a ten-story hotel building in Oklahoma City. That the concrete work thereon was about completed. That in the court of the building was an elevator, or rather two of them, operating side by side, and alternating up and down, each constructed of 2x4 timbers, consisting substantially of a floor about 4½x6 feet, supporting a framework called a "cage," which was held in place so as to prevent lateral motion by a track made of 2x4's, over which ran U-shaped iron champs, fastened, one at the top and bottom on each side of the "cage." That the elevator was "hung on the center," and was raised and lowered by cable connected with an engine on the first floor, aided by a boy called "Fussy," stationed perhaps on the tenth floor, who gave certain signals to the engineer to warn him when men were descending on it. That the elevator was originally intended to carry freight only. That at the bottom of the elevator shaft was a sign which read: "Danger. Keep Off.

Persons Riding This Hoist Do So At Their Own Risk." That notwithstanding this and the instruction of the construction company to its foremen to warn the employees to keep off of it, both foremen and employees habitually rode up and down upon it, with the knowledge of defendants, instead of using the ladders provided for ascending and descending, which were on the inside of the building. The evidence further discloses that about 11 o'clock on that day deceased and a fellow employee were ordered to go from the first to the tenth floor and fill some holes with concrete; that they did so, the fellow workman preceding deceased, each ascending on the elevator with a barrow of concrete and a shovel; that after completing said work they placed their wheelbarrows and shovels on the elevator on that floor, and started to descend in the cage, both standing to one side near the edge of the platform; that while descending thus the U-shaped clamps on the bottom of the "cage" released their hold, and the elevator "jumped the track," or "slipped out of its guides," the platform tipped halfway over, and they were hurled out and plaintiff's intestate killed. The capacity of the elevator was some 800 pounds. At the time of the injury it was carrying about half that much. It is not clear as to just what caused the elevator to tip. Some of the witnesses testify that it was caused by too much weight on one side; others that the braces which held the track were some six feet apart, and too far apart, and that the weight of the men on one side of the platform caused it to spring and the elevator to jump the track. The most we can say of it is that the cage, descending rapidly, struck a weak place in the track which, owing to the improper bracing, sprung and caused the elevator to slip out of its guides and to tip, owing to its speed downward and the excessive weight on one side. This was evidence reasonably tending to prove "defective and negligent construction," as alleged, and hence it was not error for the court to submit the facts to the jury to say

whether from them negligence should or should not be inferred as charged.

In *Randall v. Baltimore, etc., Ry. Co.,* 409 U. S. 478, 3 Sup. Ct. 322, 27 L. Ed. 1003, the court said "* * * that it is for the judge to say whether any facts have been established by sufficient evidence from which negligence can be reasonably legitimately inferred; and it is for the jury to say whether, from those facts when submitted to them, negligence ought to be inferred." When the facts are such that all reasonable men must draw the same conclusion from them, the case is one of law for the court, and may be taken from the jury.

In *Independent Cotton Oil Co. v. Beacham,* 31 Okla. 384, 120 Pac. 969, we said:

"We think there is evidence to sustain this theory, and the court below was therefore justified in submitting the cause to the jury on the question of the negligence of the defendant. The rule in this jurisdiction is: 'It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court.'"

It is the effect of defendants' contention, as the doctrine of *res ipsa loquitur* does not here apply, and the cause of the accident is not shown, that the evidence was insufficient to take the question of negligence to the jury. Assuming that said doctrine does not apply, the evidence was sufficient. The conflict in the evidence as to the cause of the injury made that a question for the jury, together with the question of whether negligence could or could not be inferred therefrom.

In *Continental Tobacco Co. v. Knoop,* 71 S. W. 3, 24 Ky. Law Rep. 1268, the court said:

"The appellee, while an employee of the appellant, was seriously and permanently injured by the falling of its elevator from the third floor to the cellar of its tobacco factory. The appellee and two other workmen were hoisting a hogshead of tobacco from the cellar to the third floor, when the wire cable to which the elevator was suspended slipped from its socket. There is some conflict in the testimony as

710 SUPREME COURT OF OKLAHOMA.

Selden-Breck Const. Co. et al. v. Linnett.

to what caused the elevator to fall, but there was sufficient evidence tending to prove that it was the result of the defective condition of the elevator to authorize the submission of the case to the jury."

In *Mathew Mulvey v. Rhode Island Locomotive Works,* 14 R. I. 204, in the syllabus it is said:

"A., a workman in the employ of B., was injured by the break of an elevator chain and the fall of the elevator in B.'s machine shop. A.'s business was to load the elevator on the lower floor and unload it on the upper. A staircase near the elevator connected the two floors, and A. was injured while riding with his load on the elevator. It appearing that the chain had broken some six weeks before and had been repaired, and the evidence being conflicting whether B.'s superintendent had been notified of the break, and it also appearing that the ratchets to arrest the fall of the elevator were not in working order. *Held,* that the question of B.'s negligence was for the jury."

*Rosellini v. Salisch,* 71 Wash. 208, 128 Pac. 213, was a suit in damages for personal injuries occasioned by the derailing of a hand car upon which plaintiff's intestate was riding as an employee. The court, after holding the doctrine of *res ipsa loquitur* did not apply, said:

"Nor can we say that the cause of the accident was not sufficiently shown. Much of appellant's argument is predicated upon the assumption that the lower half of the boxing or bushing came off. If this was so, the case would be extremely difficult; for certain elementary laws of physics would make it highly improbable that the car would have left the track so long as its weight was on the axle. But there is some testimony, and it must have been accepted by the jury, tending to show that it was the top brass or bushing which came off; that, if so, 'they would certainly have had some trouble * * * caused by the wheel going out of place as far as it could with the other wheel on the opposite side, * * * the flange of the wheel would be running against the rail.' In this class of cases absolute certainty cannot be required. There must be a point where, if a *prima facie* case is made, the burden shifts. It then became the duty of the defendant to meet this *prima facie* case and offer a reasonable explanation

of the cause of the accident. *Scarpelli v. Washington Water Power Co.,* 63 Wash. 18, 114 Pac. 870."

*Kopacin v. Crown, etc., Paper Co.,* 62 Wash. 291, 125 Pac. 281, was a suit in damages for personal injuries sustained while defendant was operating a paper mill at Oregon City. The machine consisted in part of two large revolving rollers in which the hand of defendant was crushed and injured. There the court said:

"There is no controversy as to the condition of the plank which defendant furnished plaintiff for use while working around the machine. It is contended by defendant's counsel that there is no evidence showing negligence on the part of defendant, and that the broken board had nothing to do whatever with the accident. From the evidence we think that this was a question for the determination of the jury. The board was offered in evidence, and is an exhibit in the case. From an inspection thereof, and applying natural laws, the jury could have reasonably believed that Kopacin stepped on the side of the board opposite the cleat, and that, the plank and floor being wet and slippery, the former tipped, owing the the defect, and served as a trap, and threw him forward against the machine. There is evidence tending to show this. To be plain, it is difficult to understand how one could step on the side of the board, which is unsupported at one end and near the middle, without its tipping."

And, to be plain, it is impossible for us to see how this cage running up and down between two upright tracks and secured thereto, so as to prevent lateral motion, by clamps could escape therefrom in descending, unless one of those uprights gave way and, if it gave way, how it could do so if properly braced, and, if not properly braced, how it can be said to have been properly constructed, and, if improperly constructed, how it can be doubted that defendant was *prima facie* negligent. In so holding we are not unmindful that this was an elevator intended primarily for freight, with a sign up which read: "Dangerous. Keep off. Persons riding this hoist do so at their own risk"—but which we will consider only so far as to say that, while the evidence is conflicting,

as there was evidence reasonably tending to prove that the elevator was ridden by the employees while in the discharge of their duties as much after as before the sign was put up, and that the warning conveyed was habitually disregarded by both superintendent, foremen, and employees with the knowledge of defendants, there was sufficient evidence to take the question to the jury, along with the question of defendants' negligence, of whether the notice was or was not in force at the time of the injury, and whether deceased was rightfully or wrongfully upon it at that time.

In *McDonough v. Lampher*, 55 Minn. 501, 57 N. W. 152, 43 Am. St. Rep. 541, in the syllabus it is said:

"If a person using a whole building for his business permits, but does not require, his employees to ride up and down on a freight elevator used therein, they are, while riding in going to and from work, employees. * * *"

*Boyle v. Columbus, etc., Co.,* 182 Mass. 93, 64 N. E. 726, was a suit in damages for personal injuries sustained by deceased while in defendant's employ. The facts were that defendant was one of several contractors engaged in the construction of a building in Boston; that its portion of the work consisted in putting in fireproofing material, and that deceased was injured by the falling of a hoist on which he and others were coming down from the eighth story; that defendant had erected the hoist to carry up material used in the construction of the building. On the hoist defendant had posted a sign of "Dangerous. Keep out." In affirming the judgment for plaintiff, after holding that the evidence justified the jury in finding defendant negligent in the construction of the hoist, speaking of the sign, the court said:

"The principal contention made by the defendant is that, under the notices which were posted, and which the intestates must have seen if they had exercised due care, they had no right on the hoist at the time in question, and took the hoist as they found it. The presiding judge left it to the jury to decide, in substance, whether the notices had been so openly disregarded by the superintendent.

Taylor, and acting superintendent, Henry, and by others in their presence, as to have become a dead letter, and that if they found that the defendant, or its officers or agents, knew that its employees commonly disregarded the notice, and openly rode upon the hoist in the presence and with the sanction of the defendant's representatives, this would justify them in finding that it was done by invitation."

*McNee v. Coburn, etc., Co.,* 170 Mass. 285, 49 N. E. 438, was a suit in damages for personal injuries by an employee who had sustained them upon an elevator bearing a notice similar to the one in question. In affirming the judgment for plaintiff the court said:

"If one who has posted a notice of entire prohibition permits it to be habitually disregarded—as, for instance, a notice not to ride on the platform of a street railway car, or in the baggage car of a train—a practical invitation to violate it may be inferred from habitual usage which is known to him. Long-continued practice to the contrary may have the effect to supersede or show a waiver of the rule. *O'Donnell v. Railroad Co.,* 59 Pa. 239 [98 Am. Dec. 336]; *Railroad Co. v. Langdon,* 92 Pa. 21 [37 Am. Rep. 651]; *Waterbury v. Railroad Co.* [C. C.] 17 Fed. 671."

See, also, *Wise v. Ackerman,* 76 Md. 375, 25 Atl. 424; *Clemens v. St. L. & S. F. R. Co.,* 35 Okla. 667, 131 Pac. 169.

It is assigned that the court in the second instruction erred when he charged that if the jury "believed from the evidence in the case, and from the manner of enforcing or failing to enforce said rules, that the instructions of the master were given and his warning signs were posted on the elevator for the purpose of evading the master's duty to provide safe appliances, and with the secret intent or expectation that the rule against the use of the elevator would be violated, in that case the violation of the rule would not constitute a defense. * * *" Not so. This for the reason that when defendants sought to escape liability by pleading "* * * that the defendants long before the accident had promulgated rules forbidding the use of the elevator for the transportation of employees or other persons, and that these

rules were in force at the time of the accident, and that the said Linnett had full knowledge at all times thereof; that in addition thereto there were large signs on the elevator warning all persons against riding thereon, and advising them that its use for the transportation of persons was dangerous," and plaintiff pleaded in reply a general· denial, an issue was fairly joined on the existence of said rules and the prohibition conveyed by the signs. And when plaintiff adduced evidence, as she did, reasonably tending to prove that employees rode thereupon as much after as before the signs were posted, and that, too, with the knowledge of the master, there was not only an issue, but evidence in support of the nonexistence of those rules sufficient to send that issue to the jury and authorize the court, in effect, to charge, as he did, that, if the signs were put up as by the master as a subterfuge, they were no signs at all. The objection that instruction No. 10 placed too high a duty on the master, if true, is corrected by instructions Nos. 1 and 2, and, taking the charge as a whole, correctly states the law.

There being no merit in the remaining assignments of error, the judgment of the trial court is affirmed.

HAYES, C. J., and KANE and DUNN, JJ., concur; WILLIAMS, J., not participating.