## CHAMPLIN REFINING CO. v. HUNTINGTON, Adm'x.

No. 27166.    May 25, 1937.

Rehearing Denied June 15, 1937.

H. G. McKeever and Eugene Champlin, for plaintiff in error.

W. P. Morrison, A. L. Morrison, and Nathan Scarritt, for defendant in error.

CORN, J. This is an appeal from a judgment entered in the district court of Oklahoma county in favor of the plaintiff, administratrix of F. H. Klingbiel, deceased, against the Champlin Refining Company, a foreign corporation. The parties will be referred to in the same manner as in the court below.

On November 6, 1934, the deceased, in company with two other employees of the defendant at the Enid plant, went to the top of one of the tanks, approximately 32 feet in height, to repair a leak. The roof of said tank was of a sloping nature. Walkways across the top of, and joining these tanks, had been removed to give access to the "man-ledge," which was to be unbolted.

There was no direct evidence as to how it occurred, but during the course of the work the deceased fell from the top of the tank and was killed. The administratrix brought this suit in the court below in behalf of the wife and minor child of said deceased, asking $40,000 damages for his death. The cause was tried before the Honorable Lucius Babcock, and the jury rendered a verdict for the plaintiff in the amount of $10,000. From this judgment the defendant appeals.

The petition in error sets forth nine grounds of alleged error, but these are condensed into six propositions, which will be dealt with in the order in which they are submitted in the appeal brief.

The first of these propositions submitted is that the trial court permitted evidence to go to the jury over the defendant's objection which was prejudicial to the defendant.

First under this proposition is the contention that evidence was admitted in reference to the absence of a railing at the top of the tank, and the failure to furnish the deceased with a life line and safety belt, and the failure to have "toe-boards," or footholds, at the top of this tank. The defendant contends that the allegations of the plaintiff's petition as to the failure to erect proper safeguards do not constitute negligence, and that the allegations constitute no cause of action, since there was no duty on the part of the defendant to erect such safeguards to protect the deceased when he was engaged in repair work. All testimony on behalf of plaintiff in respect to any safeguards is objected to as being prejudicial to the defendant's case.

It would seem, from the arguments offered by the defendant, that merely because the work the deceased was doing was repair work, that the defendant only owed to the deceased a place to work with tools they furnished him. In fact, their position practically amounts to a declaration that having given him a job, it rested with the deceased to look out for himself as best he could. In other words, that he as-

sumed all risk incidental to, or arising out of, his employment.

If the employer must first furnish a safe place for his employees, which is the first duty an employer owes, our first question here is whether this duty was discharged by the defendant, although the defendant contends that by reason of the nature of the work, the deceased assumed any risk arising from the work itself. Under the circumstances here, did the defendant do this? From the evidence presented it is apparent that such was not done. The fact that it was repair work, which would take only a short time, did not do away with the necessity of proper safeguards. It is hardly reasonable to say that a man is to assume all risks which might arise from his employment. Prima facie, a workman does not assume risks which might be obviated by the exercise of reasonable care on the employer's part. The risks the employee does not assume are those risks which would not have existed if the employer had properly performed his duty. No employee must be held to assume risks arising from the master's negligence.

The defendant seems to be under the impression that if the working place was hazardous, the hazard was only temporary, being repair work, and cites numerous cases from other states to the effect that the employer is not bound to protect an employee against transitory perils. It is hard to understand why defendant should arbitrarily declare that the worker must accept responsibility as is done here. Certainly the defendant could not foresee this particular leak and the consequent necessity of providing a safe means of repairing it. However, in all reasonableness it can be said that the defendant should have known repairs would eventually have to be made, and because of this, proper forethought should have been given as to providing safe means of repair.

There was no error in the trial court's allowing evidence of the lack of safety railings and safeguards to go to the jury. The plaintiff's case was predicated upon the defendant's failure to provide reasonable safeguards, and evidence of this failure was properly submitted to the jury for its determination.

Defendant cites many cases, principally from other states to the effect that while it is the duty of the master to provide a reasonably safe place in which to work, where the object of the work is to repair, the master is not responsible for dangers which inhere in the work and are only to be guarded against by the workman himself in the performance. But the case of Chicago, R. I. & P. Ry. Co. v. Schands, 57 Okla. 688, 157 P. 349, to the mind of this court supplies the better rule, holding that while a servant assumes the obvious hazards, which become more dangerous as the work progresses, the employer is not relieved of the duty to furnish a safe place to work, but must use ordinary care to make the place of work as safe as it can be made under the conditions of the work to be performed.

The rule was affirmed in the case of Riter-Conley Mfg. Co. v. O'Donnell, 64 Okla. 229, 168 P. 49, which holds that the master is not liable for injury resulting from transitory, dangerous conditions, but which states that this does not apply where the danger could have been entirely obviated by the exercise of ordinary care on the employer's part.

Defendant also complains of error in the trial court's permitting evidence of the placing of railings upon these tanks after the accident. This is scarcely worthy of consideration here. The witness made no absolute statements that the rails were placed there after the accident, and the trial court refused to allow testimony as to guard rails later placed there.

This testimony was inadvertently brought out during examination concerning previous condition of the tanks in question; and the statement of the witness to the effect that since the accident he had seen guard rails upon these tanks, in our judgment, under the facts and circumstances of this case, is not sufficient to require a reversal by this court.

The defendant also alleges error in that the testimony of the State Factory Inspector relative to life lines and the like was incompetent, declaring that admission of such testimony was prejudicial to their case; also that his testimony relative to the customary use of guard railings was incompetent. The witness was called in the nature of an expert, and being such, it is natural that he would have knowledge of what was customary. If his testimony was not to this end, from the nature of the position he holds, if he could not testify in these respects, there would be little of value to which he could testify. The fact that he was unable to call to mind a particular tower or tank of this kind would not be sufficient to discredit his testimony, and the fact that the trial court permitted

him to testify as to what was generally in use did nothing to prejudice the defendant's stand here. In Beasley v. Bond, 173 Okla. 355, 48 P. (2d) 299, this court affirmed the ruling of the trial court which allowed evidence to be admitted as to other methods of work as relevant "for the purpose of fully understanding all the facts and circumstances in connection with the method of operation." There the court said that where comparison was necessary, that it could be had either by resort to imagination or explanation and the latter was certainly preferable. Here the witness merely stated matters from which the jury was to draw the ultimate fact.

From all indications it seems that defendant's principal reason for asking a reversal is based upon the ground that the deceased was primarily negligent, and that because his own alleged negligence was the proximate cause, the defendant can bear no liability. The claim is that the deceased went about his duties in a careless manner and that his negligence, consisting of squatting on his heels upon the roof of the tower, was the proximate cause of his death. True, the defense witness testified that he lay down to do the same act the deceased was doing. From the nature of the work and the limited space where the work was being done, there are no grounds for saying he was negligent in taking the position he did. Any number of considerations might be advanced in this respect, but it is sufficient to say that merely because Klingbiel chose to work in a squatting position, rather than in a prone position, certainly is not sufficient to place the primary cause of his death on his own negligence.

The defendant states that the deceased was negligent by reason of assuming the position he did in order to do the work at hand, and that such negligence was the primary cause of his death. Then the defendant offers the argument to this court that the tower in question was a reasonably safe place, needing no special safeguards. This argument could hardly be called the essence of consistency. All things point to the conclusion that he went about the performance of his duties in a reasonable and prudent manner, and in view of this, and there being no evidence that he acted in a careless or negligent manner, there is no merit in the defendant's claim that his actions were the primary cause of what occurred later, resulting in his death.

The defendant next urges error by reason of the trial court's refusal to grant certain instructions asked for by the defendant. As shown by the plaintiff, there was a failure on the part of the defendant to set out completely the instruction, or portion thereof, objected to. Error is claimed for refusal to grant defendant's instructions Nos. 4, 7, and 8, and the claim is made that the court failed entirely to instruct as to the repair work. It is to be noted that in instruction No. 11, as given by the trial court, there is embodied practically everything requested by the defendant in the requested instructions 4, 7, and 8. Examination of the instructions as offered, and the charge given by the trial court, clearly shows that such of the defendant's offered instructions as correctly stated the law were sufficiently covered in the trial court's charge, and there was no error in refusing the requested instructions.

The fourth and fifth claims of error may well be considered together. The fourth assignment sets up that the jury's verdict was contrary to the instructions and the law. The fifth assignment sets up that the verdict was contrary to the evidence and that the evidence is insufficient to support the verdict.

The defendant urges that the deceased's own negligence was the proximate cause of his death, but that the jury wholly disregarded the conditions under which he worked. Had it been the deceased's own negligence which caused his death, the defendant should have shown, by competent evidence, that such was the case. However, this was not done, the only evidence being that the deceased did not lie down to perform his duties, and there was still no showing that this was negligence on his part. Neither was there any evidence that he was negligent in handling the tools he was using. Certainly, under the testimony offered in the case, there was no showing of negligence on the part of the deceased. Under the instruction of the trial court and from the evidence at the trial the jury determined that the deceased acted in a prudent and reasonable manner, therefore, this finding will not be disturbed.

The jury is the fact finding agency of the trial court. All the issues, the facts, the circumstances and conditions are presented in the course of the trial for the jury's consideration, and at the close of the trial it is presumed that the jury considers all of this, and renders its judgment accordingly. From the evidence at the trial, and from the testimony of the wit-

nesses, the jury in this case determined that the facts were sufficient to establish the defendant's liability, and rendered judgment accordingly.

The sixth proposition submitted: "That the court erred in permitting the verdict to stand and refusing to grant a new trial," cannot avail, inasmuch as it has already been shown that the evidence in the case was sufficient, and the jury was properly instructed as to the law.

The rule of this court in the past has been announced as being that a new trial is largely a matter for the discretion of the trial court, and where there is no abuse of this discretion, and the court below has refused such motion, such holding will not be disturbed by this court. The court below having heard the evidence during the conduct of the trial, and the jury having rendered its verdict, there are no grounds for disturbing the jury's finding, and there was no error in the trial court's refusal to do this.

The defendant having executed and delivered a supersedeas bond, which was approved by the trial court, and the plaintiff having asked for judgment on such bond, it is the order of this court that judgment on this supersedeas bond be granted as prayed for.

Judgment of the trial court affirmed.

OSBORN, C. J., and WELCH, PHELPS, and HURST, JJ., concur.