## KANSAS CITY BRIDGE CO. v. GRAVITT.

No. 29228. July 2, 1940.

Rehearing Denied Oct. 1, 1940.

*105 P. 2d 767.*

W. E. Utterback and Priscilla Utterback, Utterback & Utterback, both of Durant, for plaintiff in error.

Harry L. Atkinson and Davis & Herring, all of Oklahoma City, for defendant in error.

BAYLESS, C. J. This action was brought in the district court of Oklahoma county by Billy Gravitt, for herself and for her minor child, Betty Jean Gravitt, against the Kansas City Bridge Company to recover damages for the alleged wrongful death of her husband, Tom Gravitt. Plaintiff was awarded a $11,250 judgment, and defendant has appealed. The parties will be referred to as they appeared in the trial court. The following facts were established by the evidence:

On January 17, 1938, Tom Gravitt, an employee of defendant, while working with a crew of laborers engaged in removing a coffer dam from around the first section of a concrete pier, received an injury to his left ankle causing an inflammation of the blood stream which resulted in his death.

The coffer dam occupied an area of 15 square feet and extended below the surface of the river bed about 40 feet. The section of the pier under construction was circular in form, eight feet in diameter, and stood in the exact center of the coffer dam. It was based upon the rock bottom below the river bed, and extended upward to within four feet of the surface of the river bed. It was reinforced by vertical steel rods which extended four feet beyond the concrete pier. The top of these steel rods was about level with the surface of the river bed. The steel rods were extended beyond the first section of the pier for the purpose of "tying onto" the second section, which was to be built on top of the first. These rods formed a circle of approximately six feet in diameter, were spaced several inches apart, and were set in from the edge of the circular concrete pier about twelve inches.

The concrete forming the first section of the pier had been poured, and the area inside the coffer dam filled with sand level with the top of the aforesaid steel rods, thus burying the concrete pier some four feet under the sand. The sand placed inside the coffer dam furnished a level area upon which to rest the base of the "A" frame or rig used for pulling the sheet pilings comprising the coffer dam, and also served to equalize the pressure exerted upon the inside and outside walls of the coffer dam, so that the sheet piling could be pulled without damage to it, and according to some of the witnesses, it was placed there to protect the workmen from the steel rods.

The "A" frame had the appearance of a capital A. The base consisted of two 12x12 timbers, ten feet long, bolted together one on top of the other; two legs, consisting of 12x12 timbers, each 45 feet in length, were set on top of the base with pulleys at the top. At the time of the injury it was being used to pull the sheet piling constituting the west wall of the coffer dam. It was then setting in the southwest corner of the coffer dam almost against the west wall, with the south leg of the rig almost against the south wall of the coffer dam. Short pieces of timber spaced 14 inches apart were nailed to the south leg of the "A" frame on the east side as the rig then stood, which served as a ladder. Approximately six inches above the base of the "A" frame was a cross sash of 2x6 timber, extending from one leg to the other. The bottom rung of the aforesaid ladder was 14 inches above the said 2x6 timber. There were three methods customarily used by the workmen in descending from the ladder. (1) Sometimes they descended to the base of the "A" frame and stepped from there to the ground. The base extended one foot beyond the south leg and this was known as a "cap." (2) They frequently descended to the cap and from there to the ground. (3) The other method was to step or jump from the 2x6. The foreman of defendant company admitted having knowledge of the latter method. The base of the "A" frame had sunk in the sand eight or twelve inches at the time of the injury.

The sand inside the coffer dam settled as the work of pulling piles progressed and additional sand had to be thrown in from time to time. The sinking of the sand was a continuous process, due to the removal of the piles, and also due to the pressure exerted by the "A" frame in pulling the piles. The settling of the sand frequently left the reinforcing steel rods exposed several inches. The foreman had the sand leveled up at 7:30 a.m. on the morning of the injury. Some of the rods were then sticking up along the north side of the pier. The foreman, recognizing the danger, cautioned the men to be careful of the steel rods and had J. P. Bozeman procure planks and place them over the rods that were then exposed. Nothing further was done to cover up or protect the rods from 7:30 until the injury occurred at 11:30 a.m.

Gravitt was working up on the "A" frame when ordered by the foreman to come down. He thereupon descended the ladder, stepped onto the aforesaid

2x6 cross sash, took hold of a wire cable and walked near to the center of the "A" frame, and stepped or jumped from the 2x6 onto one of the reinforcing steel rods, which was sticking above the sand from one to three inches. The witnesses place the height of the 2x6 at from two to three feet above the ground. As to the distance measured horizontally from the place from where he stepped to the point where he struck the steel rod, three of defendant's witnesses place it at three feet, one witness at three to three and one-half feet, and the foreman said it was four or five feet.

Defendant complains that the trial court erred: First, in overruling defendant's demurrer to the evidence and in refusing to instruct a verdict for defendant; second, in giving certain instructions and in refusing certain instructions requested by defendant.

The first assigned error will be discussed under three propositions: (1) The danger was one that necessarily inhered in the work. (2) Gravitt was furnished a safe way to descend to the ground, but he abandoned it and adopted an unsafe method. (3) This was a temporary, transitory condition due to the changing nature of the work.

1. It is true that the employer is not an insurer against the obvious risks naturally incident to the work being performed; also, that the servant assumes the risk of all apparent dangers ordinarily incident to his employment. Oklahoma Pipe Line Co. v. Fallin, 176 Okla. 474, 56 P. 2d 372. However, the case of Chicago, R. I. & P. Ry. Co. v. Schands, 57 Okla. 688, 157 P. 349, furnishes a rule more applicable for determining the question of primary negligence in the instant case. Paragraphs 1 and 2 of the syllabus are as follows:

"Although a servant assumes the known and obvious increased hazards of a work which, by reason of the character of the work, becomes more dangerous as the work progresses, a master in such case is not absolved from any duty to furnish a safe place to work, but must use ordinary care to make the place where his servant works as safe as it can be made under the conditions of the work to be performed.

"The fact that there may be dangers connected with the general class of work the servant is directed to perform, which ordinary care upon the part of the master cannot remove, does not excuse him from liability for injuries due to dangers which the exercise of ordinary care would remove."

2. Defendant contends that Gravitt was furnished with a safe method of descent, in that he could have descended to the base of the "A" frame and stepped to the ground, or he could have stepped from the 2x6 to the ground, directly below the ladder, but that he abandoned these two safe methods, and instead, walked three feet north on the 2x6 before stepping to the ground, and in so doing he deliberately used an unsafe method. This contention is not applicable to the facts. There was no undisputed evidence that a safe method of descent was furnished; and, on the contrary, the record shows generally that, after workmen had descended to the 2x6, they did not step to the ground from any particular point on the 2x6. There was no method especially provided by defendant for descending from the last rung of the ladder to the ground. After the workman had descended the ladder to the 2x6, it was left to his discretion as to how he should descend from that point. Some of the witnesses testified that defendant customarily kept the rods covered several inches with sand to protect the workmen, and that the place could have been made reasonably safe for work by keeping the rods covered with sand or dirt from eight inches to a foot. Under the circumstances in this case, we are unable to hold, as a matter of law, that there was a safe way provided or that Gravitt departed from the usual and safe method of descent in walking three feet north on the 2x6 before stepping to the ground.

Because of their close proximity to the "A" frame, the defendant might reasonably have anticipated that a de-

scending workman might sustain injury from the unprotected steel rods; and it was charged with the duty of eliminating unreasonable and unnecessary hazards. In Wright v. Clark, 177 Okla. 628, 61 P. 2d 192, it was held:

"* * * It is argued by defendant that no block is made or manufactured that would be safe to ride up and down inside the derrick. * * * Evidence was * * * introduced to the effect that it was the custom of the employees of defendant to ride the block up and down in the derrick, which custom was well known to defendant. Plaintiff cites the case of Selden-Breck Construction Co. v. Linnett, 38 Okla. 704, 134 P. 956, wherein this court approved a recovery for damages in favor of one who was injured on an elevator. It was shown that the elevator was constructed for transportation of building materials and was marked 'Dangerous * * * Persons riding this hoist do so at their own risk'; but that various employees rode the elevator with the knowledge and consent of defendants. It was held that the evidence was sufficient to take the question of negligence to the jury where an employee was injured on account of defective construction of the elevator.

"* * * We conclude that the trial court did not err in submitting the * * * issues of fact to the jury. * * *"

3. It is the general rule that the master owes a continuing and nondelegable duty to the servant to furnish him with a reasonably safe place to work, reasonably safe materials with which to work, and a reasonably safe method by which to work. Wright v. Clark, 177 Okla. 628, supra; Southern Drilling Co. v. McKee, 171 Okla. 409, 42 P. 2d 265. There is an exception to this rule, to the effect that the master is not liable for injuries resulting by reason of transitory, dangerous conditions due to the shifting or changing nature of the work, which arises during the progress of the work. Defendant urges that the exception should apply to the instant case.

If the master exercises ordinary care to provide a reasonably safe place for the servant to work, but during the progress of the construction work, due to the changing conditions incident thereto, and not because of the master's negligence, a dangerous condition arises, causing injury to the servant, the master is not liable. The servant assumes the risks incident to the constantly changing condition of the uncompleted structure, as these risks are ordinarily incident to the work he has undertaken. 39 C. J. 711. However, this exception to the rule does not apply when the danger could have been obviated by the exercise of ordinary care on the part of the master. In paragraph 2 of the syllabus of Riter-Conley Mfg. Co. v. O'Donnell, 64 Okla. 229, 168 P. 49, it is said:

"To the general rule that the master must use ordinary care to provide a reasonably safe place for the servant to work, there is an exception or qualification, to the effect that the master will not be held liable for injuries resulting by reason of transitory dangerous conditions which arise and change the character of the place of work during the progress of the work in which the employees are engaged; but this exception applies only where the very progress of the work causes the conditions surrounding the place of work to change—where the change is temporary, transitory, and is due and incidental to the progress of the work being done *and not to cases where the danger could have been entirely obviated by the exercise of ordinary care.*" (The italics are ours.)

In Cosden Pipe Line Co. v. Berry, 87 Okla. 237, 210 P. 141, the general rule and the exception are discussed and it is there held that the exception to the rule does not apply in that case because the injury was not due to the risks arising as an incident to the constantly changing conditions in demolishing the structure, but rather it was due to the dangers and risks caused by the method adopted by the master in tearing down the structure. The opinion discusses the cases of Chicago, R. I. & P. Ry. v. Nagle, 55 Okla. 236, 154 P. 667, and Riter-Conley Mfg. Co. v. O'Donnell, supra, to illustrate the proper application of

the general rule and the execption. In the Nagle Case, an employee, assisting in clearing away a wreck upon a railroad, was injured by falling upon a nail in a plank in the bottom of a ditch, and the railroad was absolved of negligence. The Riter-Conley Case is discussed in the Cosden opinion, illustrating a set of circumstances where the injury was due, not to the nature of the work and inevitable risks involved or to the constantly changing conditions incident to the progress of the work, but rather it was due to dangers which the master could have removed by the exercise of ordinary care. We quote the following from the opinion of the Cosden Pipe Line Co. Case, at page 252, which is quoted therein from the Riter-Conley Case:

"The nail upon which plaintiff stepped was not dropped there during the progress of his work on the bottom of this tank; its presence there was not due nor incidental to the progress of the work in building the bottom of the tank, but the board containing it, together with more than 200 other boards containing nails, had by direction of the master been scattered there five or six days before — so long that the sand shifted by the wind had covered this one and others, completely hiding them from view. Then it cannot be said that this was a mere transitory peril, incident to and occasioned by the execution of the work, and it cannot be said under this state of facts, as shown by the evidence, that there was no evidence reasonably tending to show that the defendant was guilty of negligence.

"There are some dangers which ordinary care on the part of the master cannot remove, and for which the law does not hold him liable; but the law does not excuse him from liability for injuries due solely to dangers which the exercise of ordinary care would have removed. LaBatt on Master and Servant, p. 2475. In Barnett & Record Co. v. Schlapka, 208 Ill. 426, 70 N.E. 343, it is held that: 'The exception to the general rule as to the duty of the master to use ordinary care to provide a reasonably safe place to work, made where the character of the work is such that the relative safety of the employees neces-

sarily varies from time to time as the work progresses, and the work being done at times renders the place dangerous, applies only where the work being done necessarily renders the place dangerous, and not to a case where the danger could have been entirely obviated at a slight expense."

Paragraph 6 of the syllabus in Cosden Pipe Line Co. v. Berry, supra, states:

"Where an employee is killed while assisting in dismantling a water tank built of two-by-sixes, 16 feet long, held in place by iron hoops riveted together, and the tank is caused to collapse by the removal of the iron hoops, and if such death is due to the negligent act of one in charge of the work in failing to provide some safe method of performing the work, the master cannot avoid liability upon the ground that the negligence was that of a fellow servant, since it is held that it is a primary duty, and nondelegable, of the master to provide a safe method of work, and if negligence existed in this respect, it was negligence in the general method of the work, and not a mere detail of its performance, and arising during the progress of the work."

In Champlin Refining Co. v. Huntington, 180 Okla. 280, 69 P. 2d 31, at page 282 of the Oklahoma Report, the court said:

"But the case of Chicago, R. I. & P. Ry. Co. v. Schands, 57 Okla. 688, 157 P. 349, to the mind of this court supplies the better rule, holding that while a servant assumes the obvious hazards, which become more dangerous as the work progresses, the employer is not relieved of the duty to furnish a reasonably safe place to work, but must use ordinary care to make the place of work as safe as it can be made under the conditions of the work to be performed.

"The rule is affirmed in the case of Riter-Conley Mfg. Co. v. O'Donnell, * * * which holds that the master is not liable for injury resulting from transitory dangerous conditions, but which states that this does not apply where the danger could have been entirely obviated by the exercise of ordinary care on the employer's part."

The master cannot escape his continuing duty to provide a reasonably safe place to work on the ground that the nature of the work was changing, and the dangerous condition transitory, when as a matter of fact the condition was known to be constantly recurring.

The evidence in this case was sufficient to carry to the jury the question of primary negligence of the defendant company. In reviewing a denial of motion to peremptorily direct verdict for defendant, the evidence must be considered in its aspects most favorable to the plaintiff. Kenmont Coal Co. v. Patton, 268 Fed. 334. The foreman on the job recognized the danger that existed. When the work was commenced on the morning of the injury he had boards placed over the steel rods that were then sticking up, and warned the workmen to be careful of the steel rods. Nothing further was done toward covering up the rods until the injury occurred at 11:30 a.m. He knew that the workmen frequently stepped from the 2x6 to the ground, that the 2x6 was two or three feet above the ground and that the steel rods were sticking above the sand from one to three inches, within a distance of three feet from the 2x6.

From a review of the record in this case, it appears that the jury might properly have found that the condition causing the injury involved might reasonably have been anticipated and provided against by a reasonably prudent employer.

The questions decided in this opinion dispose of all objections raised by defendant to the instructions given and to those requested by defendant which the court refused to give.

Judgment is therefore affirmed.

Defendant in error having moved for judgment on the supersedeas bond, it is therefore ordered that judgment be rendered on the bond as prayed.

RILEY, OSBORN, HURST, and DANNER, JJ., concur.