TRADERS COMPRESS CO. v.
STEIGLER, Adm'r.

No. 31773. Jan. 8, 1946.

Rehearing Denied April 23, 1946.

Application for Leave to File Second
Petition for Rehearing Denied
June 4, 1946.

169 P. 2d 205.

Cruce, Satterfield & Grigsby, of Oklahoma City, for plaintiff in error.

J. B. Moore, of Ardmore, for defendant in error.

BAYLESS, J. This is an appeal by the Traders Compress Company, a corporation, from a judgment rendered against it in the district court of Carter county, in favor of George Steigler, administrator of the estate of Jim Mitchell, deceased, in an action for damages for wrongful death of the deceased.

The defendant offered no evidence. It relies for reversal on the alleged errors of the trial court in overruling its demurrer to plaintiff's petition and in overruling its motion for directed verdict.

The allegations of plaintiff's' petition and the evidence disclose substantially the following facts: Defendant was the owner and operator of a compress company and warehouses located and situated in the southeast part of the city of Ardmore. The tract of land upon which these buildings were located is intersected by South Washington street, the same crossing it from north to south, and is also partially intersected by Fourth avenue, which approaches from the west and terminates on the property of defendant on South Washington street. The defendant maintains and operates a compress and a large warehouse and storage house on the east side of Washington street and also maintains a large warehouse on the west side of such street. Large stocks of cotton are kept and stored in said warehouses. In order to protect such warehouses and guard their property from theft, fire, or other modes of destruction defendant employs and maintains watchmen both day and night. Prior to and on the 24th day of December, 1942, deceased, while employed as such watchman and while in the discharge of his duties was required, in making his inspection, to make 24 round trips and required to cross South Washington street between the hours of 7 o'clock in the evening and 7 o'clock in the morning 48 times; that while performing these duties on the 24th day of December, 1942, and while crossing said street from the warehouse on the west side thereof and going to

the warehouse on the east side of said street, he was struck by an automobile driven by Alvin Gladden approaching from the south·side of said street and was killed. The accident occurred about 9:30 at night. It was a stormy and cloudy night and Gladden was traveling at the rate of approximately 40 miles per hour at the time of the accident. The evidence discloses that South Washington street was one of the main thoroughfares of the city of Ardmore and was a heavily traveled street; that a short distance south of where the accident occurred there is an underpass and that emerging from the underpass south of where the accident occurred there is a curve in the street which tends to obstruct the view and there is an incline in the street which causes traffic at this point to travel at a rapid rate of speed. It is further alleged and proved that defendant company did not install any danger signals or take any precaution to protect its employees in crossing the street nor did it furnish them with any proper light with which they could have flashed such signal. The evidence discloses that the only light furnished deceased by defendant was a coal oil lantern. The evidence shows that such lantern did not display light for any distance; that it was of no value for the purpose of signaling traffic; that if a red lantern had been furnished deceased it would have afforded him some protection in crossing the street.

It is plaintiff's contention that defendant knowing the dangerous place in which deceased in the course of his employment was required to cross and re-cross South Washington street, the duty devolved upon it to install a danger signal or to furnish him a light with which he could have flashed such signal in order to protect himself in crossing the street.

It is the theory of defendant that it owed no duty to deceased in this respect; that it had no control over South Washington street nor could it control or govern traffic on such street; that it had no authority to enter upon the street for the purpose of installing a danger signal nor had it authority in any way to control traffic on such street. It cites and relies upon the following general rule:

"As a general rule the master is not required to furnish safe place for servant to work on premises which master does not own and over which he has no control."

Numerous authorities are cited by each of the parties in support of their respective contentions. We are of the opinion that those cited by defendant are more properly applicable to the record before us than those cited by the plaintiff. It must be recognized that the nature of the business engaged in by some employers requires their employees to use the public streets and highways, and since the employers in these instances do not own the public highways, they have no exclusive control over them. The use of public highways and streets by employees in the performance of their duties for the master requires them to assume and to bear the same relation to the other users of such streets and highways as they would use in their own private affairs. No court has yet gone to the extent of holding that a street or public highway is of itself a dangerous or unsafe place in which to pursue one's employment, where the employment does not require more than passing across or along the street or public highway from time to time.

Even if there could be an exception or qualification of this rule so that it might be said that a master was guilty of negligence to some extent in requiring his employees to cross streets in the performance of their duties and thereby fail to furnish his employee a reasonably safe place to work, we think the rule of proximate cause would nevertheless preclude recovery in this instance. The most comprehensive statement of the rule with respect to proximate cause as it is applied to test one's liability for an alleged act of negligence is found in Oklahoma Nat-

ural Gas Co. v. Courtney, 182 Okla. 582, 79 P. 2d 235, as follows:

"Where there is an intervening, responsible agency, which directly produces the injury, as in this case, the question as to whether the original negligence is to be regarded as the proximate cause of the injury, or only as a condition, or remote cause, is to be determined by ascertaining whether the agency which intervened was of such a character, and the circumstances under which it occurred were such, that it might have been reasonably expected that such agency or a similar one would intervene in such a way as to be likely to produce an injury similar to the one actually caused. If, under the circumstances, the intervention of such an agency in the manner stated might reasonably have been expected in the usual course of events, and according to common experience, then the chain of causation, extending from the original wrongful act to the injury, is not broken by the independent, intervening agency, and the original wrongful act will be treated as the proximate cause."

In other words, the intervening, independent act of a third person over whom the employer in this instance had no control whatsoever caused the injury complained of in this instance and, therefore, is an act for which the employer ought not, in law, to be responsible.

See, also, City of Okmulgee v. Hemphill, 183 Okla. 450, 83 P. 2d 189, for a discussion of proximate cause where it was assumed that the city was guilty of negligence in the first instance, but was not held liable for the injuries which a pedestrian received through a chain of circumstances alleged to have had its inception through said act of negligence on the part of the city.

Another case of significance in the consideration of an issue of this case is that of Guthrie v. City of Henryetta, 177 Okla. 122, 57 P. 2d 1165, in which instance the employee's duties required him to remain in the street, armed with a flag for the purpose of signaling traffic and warning of a barricade in the street in connection with the repairs being made thereto. This employee was stricken and killed in the performance of his duty by an automobile, under aggravated circumstances. The circumstances in this case in connection with the operation of the automobile may not be of the aggravated character of those in the Guthrie Case but, having in mind the independence of the drivers of automobiles from any control by persons in the position of either the employer or the employee in this case, there is little room for distinction when it comes to determining whether the employer shall be held responsible for injuries to his employees through the independent act of the third person.

The judgment appealed from is reversed.

GIBSON, C.J., and OSBORN, CORN, and DAVISON, JJ., concur. HURST, V.C.J., and RILEY and WELCH, JJ., dissent.