NATIONAL VALVE & MFG. CO. et al.
v. WRIGHT, Adm'r.

No. 34340.   Dec. 26, 1951.

*240 P. 2d 769.*

Pierce, Rucker, Mock, Tabor & Duncan, Tulsa, for plaintiff in error National Valve & Manufacturing Company.

Hudson, Hudson & Wheaton, Tulsa, for plaintiff in error W. R. Grimshaw Company.

Leo J. Williams, Roy F. Ford, Charles D. Crandall, and Dick Hansen, Oklahoma City, for defendant in error.

BINGAMAN, J. This action was brought by Hasbrouck S. Wright, administrator of the estate of L. L. (Roy) Conner, deceased, against the defendants, the National Valve & Manufacturing Company, a corporation, and W. R. Grimshaw Company, a copartnership, and Public Service Company of Oklahoma, a corporation, to recover damages for the wrongful death of Conner. In National Valve & Mfg. Co. v. Wright, 205 Okla. 571, 242 P.2d 766, we upheld the judgment or order of the district court of Tulsa county, vacating and setting aside a previous judgment rendered upon a settlement or compromise made by the widow of Conner and the attorneys for plaintiff, without the knowledge and consent of the administrator and against his wishes. After this judgment was vacated by the district court, the case was tried on the merits. At the conclusion of plaintiff's evidence all three defendants separately demurred thereto. The trial court sustained the demurrer of Public Service Company of Oklahoma, but overruled the demurrers of the National Valve & Manufacturing Company and W. R. Grimshaw Company. The last-named defendants stood on their demurrers to the evidence, refused to produce any evidence in their behalf and waived argument to the jury. The jury returned a verdict against both defendants in the sum of $53,000. Thereafter the trial court required the plaintiff to file a remittitur of $10,000, and upon the filing thereof overruled the motions of the Valve Company and the Grimshaw Company for new trial. Both defendants appeal.

There is no substantial dispute as to the essential facts. At the time of the unfortunate accident in which Conner lost his life, on June 12, 1947, Public Service Company was engaged in building an addition to its plant at Tulsa. W. R. Grimshaw Company was the general contractor employed to erect the building, and the Valve Company was one of several independent contractors also employed by Public Service Company to install various kinds of equipment in the building. Conner was employed by the Valve Company, and at the time of the accident was engaged in installing a piece of equipment on the fifth floor of the building. The place where his duties required him to work was a five foot wide concrete ledge or platform which overlooked a paved area some 50 feet below. At one time a temporary guard rail, made of two by four inch lumber, had been installed at the outer edge of this ledge, but prior to the time Conner started working on the ledge, the guard rail had been removed, by whom or just when this was done not being shown. However, from the evidence it appears that this removal took place at least three days before Conner was killed, since employees of the Valve Company, including the superintendent in charge of its operations there, testified that they had then gone up to the ledge and that it had no guard rail around it. At the time he was killed, Conner was standing about a foot from the outer edge of the ledge or platform, facing another employee, with whom he was consulting about the work, when a board from the scaffold above him, which was being dismantled by employees of the Grimshaw Company, fell upon him, striking him on the head or shoulders, and knocked him from the ledge so that he fell to the paved area some 50 feet below. Whether his death was caused by the blow of the heavy timber striking him or by his falling upon the concrete floor of the area below

is not definitely shown. While the employees of the Valve Company, who were on the ledge, testified that the heavy piece of two by twelve inch lumber dropped from above struck him on the head, the employees of the Grimshaw Company, who were above him and in a better position to see, testified that the board struck him on the shoulder. In any event he was almost instantly killed as a result of the accident.

Plaintiff charged in his petition that the Valve Company was negligent in failing to provide the deceased with a safe place to work, in that it did not place a guard rail around the ledge, and that the Grimshaw Company was negligent in that its employees dropped the timber or plank upon Conner, without warning to him, and that the said acts of negligence concurred to cause and did cause Conner's death. In his petition he also, in a second count, asked for punitive damages, but the demurrer of the defendants to this count was sustained and the matter of punitive damages passed out of the case.

In this court the Valve Company contends that the evidence was not sufficient to show negligence on its part, for the reason that the work was being conducted on the premises of a third party, which it did not own and over which it had no control, and that therefore it was not required to furnish a safe place to work, citing 35 Am. Jur. "Master and Servant", §174; Traders Compress Co. v. Steigler, 197 Okla. 204, 169 P. 2d 205, and numerous cases from other jurisdictions, holding that in such case the duty of the employer to furnish a safe place to work is conditioned upon the fact that he has direct control and supervision over the work and the premises. It further urges that under the case of Kansas City Bridge Co. v. Gravitt, 188 Okla. 30, 105 P. 2d 767, and of Cosden Pipe Line Co. v. Berry, 87 Okla. 237, 210 P. 141, the evidence must show that it knew of the dangerous condition and could have obviated

the same by the exercise of ordinary care. It also asserts that the deceased assumed the risk arising from the unguarded condition of the ledge.

The evidence in this case discloses that at the time the work was being done by the employees of the Valve Company, on the concrete ledge from which Conner fell, the ledge was not occupied by the employees of any other contractor, but that it was solely in possession of and under the control of the Valve Company for the purpose of doing the work it was employed to do. The evidence further shows that the lack of a guard rail around the ledge was known to the operating superintendent in charge of the work for the Valve Company at least three days prior to the time the accident occurred, and that with his knowledge, and apparently at his direction, employees of the company had been working upon the ledge at various times during the two or three days preceding Conner's death. The superintendent for the Grimshaw Company testified that the job was a union job, and that his company employed the only carpenters working on the project, and that if requested he would have installed a guard rail for the Valve Company at any time. The danger of permitting a man to work upon this ledge in such condition should have been, we think, apparent to any reasonable man, and we think further that a reasonably careful employer in such case would have installed a guard rail, or taken some measures to protect its employees from the possibility of a fall from the ledge. Certainly, it might reasonably be anticipated by such employer that a workman might stumble and fall therefrom, or that a fall might be caused by the intervening acts of some third party, particularly when work was being conducted on the roof above at various times, in which case there would be the possibility that some object might be accidentally dropped upon the ledge from above. The work which the Valve Company's employees were engaged in upon the ledge was not temporary or

transitory, which, as pointed out in Riter-Conley Mfg. Co. v. O'Donnell, 64 Okla. 229, 168 P. 49, is the only kind of work to which the exception to the rule requiring the master to provide a safe place applies. But that case further holds that the exception does not apply to cases where the danger could have been entirely obviated by the exercise of ordinary care. That case is cited with approval in Champlin Refining Co. v. Huntington, 180 Okla. 280, 69 P. 2d 31, and in numerous other cases involving a similar question.

In Chicago, R. I. & P. Ry. Co. v. Schands, 57 Okla. 688, 157 P. 349, we noted the doctrine announced in numerous cases that the master was not required to provide a safe place of work where the dangers to its employees increased as the work progressed, but that risks attendant thereon were assumed by them. In that case we said:

"We are not willing to subscribe to the doctrine that because an employment is known to be dangerous the master is absolved from any duty to exercise reasonable care to furnish a safe place to work. Rather the master's duty is to exercise ordinary care to make the place where his servant works as safe as it can be made under the conditions of the work to be performed."

This case has been followed in numerous decisions of this court, notably in Kansas City Bridge Co. v. Gravitt, supra, and Champlin Refining Co. v. Huntington, supra. In all these cases we have announced adherence to the rule that the fact that the work is being done in the construction or repairing of buildings or other structures, and is transitory in its nature, does not absolve the employer from the duty to make the place where his employees are working as safe as he reasonably may, and that in such case this duty devolves upon the employer, without regard to the doctrine of assumption of risk where the danger is open and apparent. This is the general rule. 56 C. J. S. p. 918, §210.

The rule announced in these cases is applicable to the instant case. While here the danger was open and apparent, it was known to the Valve Company's superintendent, and could have been obviated by simply requesting the Grimshaw Company to reconstruct the railing around the outer rim of the ledge in the same place it had formerly occupied. The employer should have anticipated that due to the construction work being carried on above the ledge, or due to the movements of the men upon the ledge, an employee might be injured or killed by falling therefrom, and should have made the place as safe as it could be made under the circumstances. We think this duty rested upon the Valve Company, and evidence of its failure to do so was sufficient to take to the jury the question of whether or not it was negligent in failing to provide such guard rail.

It is also contended by the Valve Company that evidence was insufficient to show that any negligence on its part was the proximate cause of the accident, but that the acts of the employees of the Grimshaw Company, in dropping the plank or timber upon Conner, was an independent intervening cause which was solely responsible for the injury. It says that the failure to provide the guard rail was only a condition which in no way served to set the chain of causation resulting in the injury in motion, citing City of Okmulgee v. Hemphill, 183 Okla. 450, 83 P. 2d 189, Oklahoma City v. Baker, 195 Okla. 238, 156 P. 2d 612, and other cases. But in the instant case the witnesses testified that while the blow from the plank knocked Conner backwards and down, he would not have fallen from the ledge if there had been a guard rail around it. If, as testified by the employees of Grimshaw, the plank struck him on the shoulder, that blow would not have been sufficient to have caused his death, but his fall to the concrete pavement, 50 feet below, would have been the cause. We think this evidence was sufficient to take to the jury the ques-

tion of whether the negligence of both Grimshaw Company and the Valve Company concurred in causing the death of Conner, and also the question of whether or not the failure to provide the guard rail was the proximate cause of Conner's death. In City of Okmulgee v. Hemphill, supra, we said that concurrent causes were causes acting contemporaneously, and which together caused the injury, which injury would not have resulted in the absence of either, and we are committed to the rule that in such case the question of whether or not the defendant's negligence was the proximate cause of the injury was a question for the jury. Oklahoma Natural Gas Co. v. Courtney, 182 Okla. 582, 79 P. 2d 235; St. Louis & S. F. Ry. Co. v. Darnell, 42 Okla. 394, 141 P. 785. In these cases we announced the rule that where the evidence was conflicting, or where men of ordinary intelligence might differ on the question of proximate cause, it was for the jury to determine.

The Valve Company next contends that the trial court erred in permitting plaintiff to introduce in evidence a photograph of the ledge, taken some time after the accident and shortly before the trial, urging that it was shown that the condition of the ledge had changed, and that the photograph was therefore inadmissible, citing Massey v. Ivester, 168 Okla. 464, 33 P. 2d 765, and other cases. In the instant case the photograph was offered for the purpose of showing that part of the ledge upon which the deceased was standing when he was struck by the plank. It was admitted that machinery and equipment had been installed since the date of the accident, and that a guard rail had been placed around the ledge, and all these changes were pointed out by the witnesses. We think the photograph was admissible under the rule announced in 32 C. J. S., §715, p. 623, which holds that the fact that there have been changes in conditions will not exclude a photograph where the changes can be and are explained, so that as explained the photograph will give a correct understanding of the condition at the time to which the controversy relates. This rule was followed in Missouri, K. & T. Ry. Co. v. Smith, 97 Okla. 152, 223 P. 373. In the instant case the trial court admitted the photograph in evidence, not as an exact reproduction of the condition of the ledge at the time the deceased was killed, but for the purpose of showing its width and the position where plaintiff was standing at the time of his death, so that the jury might better understand the conditions then existing. It was admitted only after the various changes which has been made after Conner was killed had been pointed out to the jury. We think it was properly admitted.

It is also urged that the trial court erred in admitting testimony of the witness, Owens, to the effect that he had offered Conner, who had been formerly employed by him as an oil well driller, a job which would pay him a better salary and which had more chances of advancement than his position with the Valve Company, and that Conner had agreed to take the position as soon as his work on the Public Srevice Company building had been finished. We think this evidence was properly admitted. It was not speculative or conjectural as to future earnings, but was evidence of a definite offer and a definite acceptance of a position in the near future, which Conner's wife testified had been communicated to her by Conner prior to his death. In 25 C. J. S., §123, p. 1292, it is said that the weight of authority is to the effect that evidence as to the earning capacity of decedent is not necessarily limited to a showing of what he was earning at the time of his death, and that evidence tending to show the probability of decedent's earning a greater income may be received. Similar evidence was held admissible in Producers & Refiners Corp. v. Castile, 89 Okla. 261, 214 P. 121. We think the evidence was properly admitted.

It is also contended that the trial court erred in permitting an attorney for plaintiff, in his argument to the jury, to make inflammatory and prejudicial remarks to the jury, and in refusing to grant a mistrial therefor. We have examined the record and it appears therefrom that some of the language used by counsel in his argument was improper, but so far as the record shows the defendants were in nowise prejudiced thereby. Furthermore, the trial court, as a condition to overruling the motion for new trial, required a remittitur of $10,000, cutting the verdict to approximately one-half of the amount which plaintiff was shown to be capable of earning during the remainder of his life span. We conclude in such case that the improper argument does not require a reversal. We have heretofore held that misconduct of counsel in argument must result in manifest error to work a reversal of the case. Safe-Way Cab Service Co. of Oklahoma City v. Gadberry, 180 Okla. 51, 67 P. 2d 434; American Fidelity & Casualty Co. v. Bennett, 182 Okla. 71, 76 P. 2d 245.

The sole contention of the Grimshaw Company on appeal is that the verdict is excessive. It argues that the jury did not take into consideration the probability of loss of earnings due to illness, loss of employment, reduction of wages, and the infirmities of increasing age. From the record it appears that at the time of his death Conner was 51 years old, with an expectancy, according to the American Mortality Tables, of 20.2 years, and that his then earning capacity was approximately $4,000 per year. It further appears that within a short time after his death wages of men working at the same work in which he was engaged were raised 25 cents per hour, and in addition the witness, Owens, testified to the offer by him and acceptance by Conner of a position which would pay Conner a starting salary of $450 a month, plus a house to live in, free of charge, and in which employment opportunities for advancement were ever present. The testimony shows that Conner was unusually strong and able-bodied, healthy, energetic and of good habits; that he did not smoke, drink or gamble, but used his earnings to provide for his family and accumulate savings for the future. His earnings, based on his continued employment at the same wages he was receiving at the time of his death, would, if such employment continued during his life expectancy, have amounted to more than $80,000. The jury's verdict as reduced by the court was $43,000, just a little more than one-half of this amount.

In Jordan Bus Co. v. Garnand, 203 Okla. 623, 225 P. 2d 173, we pointed out the tendency of juries, under present conditions, to return higher verdicts than formerly because of the depreciated value of the dollar. This condition is not peculiar to Oklahoma alone, but obtains in numerous localities. Thus, in Holder v. Key System, 88 Cal. App. 2d 925, 200 P. 2d 98, the court upheld a verdict of $45,000 for the death of a man 56 years old, with a life expectancy of 16.7 years, who at the time of his death was earning $180 a month, but in which the pay for work of the same character had advanced so that had he been living at the date of the trial he would have been earning $240 per month. In the absence of any showing of passion or prejudice on the part of the jury, and after the reduction of the verdict by the district court, we are unwilling to hold that the verdict and judgment are excessive.

Affirmed.

HALLEY, V. C. J., and WELCH, CORN, DAVISON, JOHNSON, and O'NEAL, JJ., concur.