## OKLAHOMA PIPE LINE CO. v. FALLIN.

No. 26344. Feb. 25, 1936.

Rehearing Denied April 7, 1936.

Gibson, Maxey & Holleman, for plaintiff in error.

Wilcox & Swank, for defendant in error.

PHELPS, J. The defendant company was clearing a right of way for the laying of a pipe line. It was necessary to remove surfaces of high places and fill in nearby low places with the dirt therefrom. The plaintiff, a farmer, lived nearby. He brought his team of mules, harness and slip, and worked for the defendant, removing and transporting the earth and other substances short distances for about six days before his mules were injured, for which injury he recovered damages against the defendant, and the defendant appeals.

The mules were injured by the slip belonging to plaintiff. A slip, such as was here used, is a horse-drawn scraper, a two-handled metal scoop without wheels and with a bail to which the mules were hitched, and by which they pulled the scoop. When the mules pulled the slip, the person operating the slip by the handles in the rear would regulate the front edge so as to scoop the earth, gravel, and other substances into the slip until it was full, and then so regulate it that it could be pulled away and dumped at the proper place.

The plaintiff and three other men operating slips, and also other employees of the defendant, were slipping the material from the bank of a ravine into the bottom of the ravine. It was a steep, short slope. Prior to this time small trees had been removed from the slope, the stumps had been dyna-

mited from the ground, and considerable work had been done on removing the roots therefrom. The evidence was conflicting as to whether it had been plowed, but at any rate it is not denied that the presence of the roots was known to everyone and that considerable effort had been put forth to remove them.

While the plaintiff's mules were pulling down hill the forward edge of the slip caught on a root. The mules strained forward, the edge of the slip came off the root, or the root broke, and this threw the slip's sharp edge against the hind leg of one of the mules, just above the ankle. That mule then jumped forward, they both got excited and the result was that the tendons in a leg of one mule, and in both legs of the other mule, were severed. A veterinarian was called, and because of his opinion that the mules were beyond recovery, and because the mules were suffering intensely from standing on the stumps of their legs with the hoofs sticking up, they were shot pursuant to his orders. There is a conflict in the evidence as to whether defendant's foreman promised plaintiff, before the shooting, that the company would buy him another pair of mules. The significance of this phase of the controversy is not seriously urged in the briefs and it is of little importance anyway, due to the fact that their intense suffering and the hopelessness of their chance of recovery is established by all of the evidence, and that to put them out of their misery was a humane necessity. For that matter, however, there was no contention by plaintiff on the witness stand that he would not have consented to the mules being shot if their replacement had not been promised, and when asked that question, point blank, he refused to commit himself.

Plaintiff's recovery for the value of the mules is predicated upon the alleged negligence of defendant. This negligence is said to consist of the defendant's failure to remove all of the roots from the ground, before the plaintiff went over it with his slip. The verdict of a jury, and the judgment of the trial judge entered thereon, should never be reversed for failure of evidence without a very careful study of the entire record, in a search for competent evidence reasonably tending to support it. We have read the entire record, and are unable to discover any theory upon which the trial judge was authorized in permitting the issues herein to go to a jury.

It is, of course, unfortunate that the plaintiff lost his mules, but there could be no legal requirement that the defendant replace the mules, or pay for them, unless the plaintiff should first establish some kind of negligence by the defendant, resulting in the injury. Was it incumbent upon the defendant to conduct an inspection of the soil, in order to discover the possible presence of some remaining root, rock, or other obstruction? Under the circumstances of the case, we do not think so. The very nature of the work was the removal of the soil and its contents. That was what the plaintiff was hired to do, and the plaintiff and his fellow workmen were jointly engaged in such removal at the time of the accident. It is common knowledge that seldom may dirt be dug or scooped without encountering obstacles. In addition to his general experience as a farmer, and with the knowledge obviously gained from the ownership, possession, and use of such a slip, the plaintiff had worked on this job for about six days before the accident on similar terrain and frankly testified, as did other witnesses, that the roots were plainly visible. Plaintiff testified that the soil was loose and sandy, was disturbed so that he could see the roots, and that he knew they were there.

The doctrine that the employer must provide the employee with a safe place to work does not make the employer an insurer against the obvious risks naturally incident to the identical task being performed, nor does it do away with the principle that a servant assumes the risk of all apparent dangers ordinarily incident to his employment. Gelruth v. Derr Const. Co., 51 Okla. 103, 151 P. 875. An employee assumes the ordinary risks and hazards of his occupation and those defects and risks which are known to him or which would be discovered by the exercise of reasonable care. Riter-Conley Mfg. Co. v. O'Donnell, 64 Okla. 229, 168 P. 49; A., T. & S. F. Ry. Co. v. Dempsey, 105 Okla. 221, 232 P. 375. The latter case is strikingly similar to the present situation: There the plaintiff was employed at plowing; the plowshare struck a concealed stone, causing a lurch by the handle of the plow, injuring plaintiff's wrist. A judgment for plaintiff was reversed by this court, primarily because the striking of rocks was held to be an incident of the employment. It is said by plaintiff that that case is distinguishable from this, in that the rock was concealed, and its presence unknown, while in the instant case the presence of roots was known to the defendant. But it was also known to plaintiff,

and the attempted distinction overlooks the fact that the basis of the reasoning in the Dempsey Case is that, regardless of whether the presence of that particular rock was known, it should nevertheless have been expected, which amounts to the same thing. The opinion said:

"Striking rocks is so common in Oklahoma that a plowman can scarcely say that it is not an incident and one of the dangers and hazards of his employment. Plaintiff had worked on similar fills. His experience was such that it cannot be said he was imposed upon by directing him into a place of danger on this occasion. If defendant could be held liable under these circumstances, every farmer would need indemnity in the employment of a plowman. The collision with the stone was an ordinary hazard which all men may expect who engage in such occupation. There is no evidence tending to show primary negligence or breach of duty on the part of defendant. Chicago, R. I. & P. Ry. Co. v. Duran, 38 Okla. 719, 134 P. 876, and cases therein cited; Lakey v. North McAlester Coal Co., 98 Okla. 130, 224 P. 309. As held in the Lakey Case, proof of injury is not enough; the plaintiff must go further and offer proof of some fact or circumstance from which it might be reasonably inferred that defendant was in some way to blame for the injury. A carpenter may strike a nail in such a way as to cause same to be deflected into his eye and injure it; the chips of the axman may fly into his eye and injure same. A plowman may strike a hidden rock or concealed stump by which, through the blow of the plowhandle, he may be injured. Each injury results from an accident, a risk that is incident to the employment and is assumed as a matter of law by the employee. Smith v. Acme Milling Co., 34 Okla. 439, 126 P. 190."

No exception should be created in the instant case because of plaintiff's claim of inexperience; he negatived whatever benefit may have been derived from such allegation by the frank admission that he saw the roots and knew of their presence,—not to speak of his preceding six days' experience on the same kind of work.

Where there are disputed issues, which issues are material, their determination should be left to the jury, but where the evidence is such that reasonable men would not differ in their conclusions therefrom, and those conclusions, coupled with the properly applicable principles of law, indicate liability or the absence thereof, the court should direct the proper verdict.

It is of no help to say that what is a reasonably safe place to work is a matter for the jury to decide, depending upon the facts and circumstances of the particular case, when those facts and circumstances, taken in their aspect most favorable to plaintiff, negative liability as a matter of law. One may not expect to engage in the digging or removal of earth from the wooded portions of Oklahoma without encountering the usual rocks, roots, and other impedimenta which are a component part thereof. Viewing the whole record, the evidence presents nothing but a plain case of assumption of risk. If the roots were in plain sight of plaintiff, as he testified, then the risk was all the more obvious and apparent, and no justification exists in law or good reason to cast his misfortune on the defendant. Reversed and remanded.

McNEILL, C. J., and WELCH, BUSBY, and CORN, JJ., concur.