D. J. DONAHOE and Helen Clark Donahoe, Plaintiffs in Error,

v.

Raymond MOULTON, Defendant in Error.

No. 37223.

Supreme Court of Oklahoma.

July 17, 1956.

defendants, for certain alleged personal injuries he claimed to have received when he fell down in the empty concrete swimming pool in their back yard, while cleaning it.

Defendants have lodged this appeal, urging, among others, error of the trial court in overruling their separate demurrers to the evidence and motions for directed verdict. Their position is that the evidence, with all of the reasonable inferences deducible therefrom, was insufficient to establish any legal responsibility on the part of defendants, or either of them, for plaintiff's accident and the alleged injury claimed to have resulted therefrom. Our continued reference to the parties will be by their trial court designations.

All of the parties reside in Ponca City, Oklahoma. Plaintiff's occupation is that of a so-called "yard-man", his work consisting principally of mowing lawns. He also tends and sprays shrubbery and does other odd jobs connected with caring for yards around various residences in that city. Among plaintiff's regular customers are the defendant husband and wife, whose yard he has worked in, more or less regularly, for the past 20 years. Since 1940, defendants' yard has had a concrete swimming pool in it; and, in addition to his regular yard work, plaintiff has, at various times, cleaned said pool. Originally he used a mixture of lye and starch, in addition to soap and water, as a cleaning agent.

On an occasion in June, 1951, when plaintiff was working at defendants' residence, the husband, Mr. Donahoe, brought him, according to plaintiff's testimony, a small bottle which he told plaintiff contained muriatic acid, and asked him to try it in cleaning the pool. Plaintiff did so, and reported back to Mr. Donahoe that the acid would "really do the work." Thereupon, according to plaintiff, Mr. Donahoe purchased four one-gallon glass jugs of the acid and placed them in a small shed in the yard to be available for future use in cleaning the pool.

The accident involved herein occurred approximately two years later, after the defendant, Mrs. Donahoe, asked plaintiff, who with his son was doing some of his regular

Butler, Rinehart & Morrison, Oklahoma City, for plaintiffs in error.

Duffy & Johnson, Ponca City, and C. Lawrence Elder, Tulsa, for defendant in error.

BLACKBIRD, Justice.

In the trial court, defendant in error, as plaintiff obtained a verdict and judgment for damages against plaintiffs in error, as

yard work at defendants' home, to help defendant's son finish cleaning the pool. According to plaintiff, he and his son thereupon interrupted their yard work and, at Mrs. Donahoe's specific direction, got one of the jugs of acid out of the shed and took it down into the empty pool. In the procedure plaintiff and his son followed in cleaning the pool, plaintiff would pour the acid on various areas of its floor or bottom, and then scrub those places with a soap-sudsy mixture of Tide and water, after which plaintiff's son followed behind him rinsing off the cement with a garden hose. It was during this process that plaintiff fainted, or fell, on the concrete floor and one or more steel scrub brushes that were laying on it, and suffered the alleged injuries for which he recovered damages. Plaintiff's evidence tended to show that his collapse or fall was due to the effect on his body of fumes emitted by the muriatic acid and its erosive action on the concrete and the steel brushes.

Plaintiff's alleged cause of action against defendants was predicated upon their negligence in failing to warn him of the dangers of so using the acid and failing to instruct him in safety measures to lessen and obviate these dangers, and provide him with the necessary safety equipment therefor.

According to defendants' testimony, they had nothing to do with plaintiff's using the acid in cleaning the pool (though it was established beyond any doubt that their money paid for it). Consistent with these denials, there was no evidence whatsoever that defendants gave plaintiff any instruction concerning use of the acid, the danger involved, and how to avoid it. They admitted, however, that they knew it was dangerous, and Mrs. Donahoe testified, in substance, that for this reason she was afraid to have it stored on the premises.

Under Proposition I of their initial brief, in which they contend that no negligence on their part was proved to be the cause of plaintiff's injuries, defendants concede (in conformity with the testimony of plaintiff's chemist witness) that when muriatic acid is used "full strength" precaution should be taken against letting "the fumes liberated by it touch the skin, as it would burn the skin and be harmful to the eyes." Plaintiff's chemist witness testified that muriatic acid, is a solution of hydrogen chloride gas in water; and that when it is poured out in concentrated form on concrete in the open air, it will dissolve a part of the concrete and evolve carbon dioxide gas; and that it will dissolve the steel in a steel brush and liberate hydrogen gas in the form of a fine spray and mist. Plaintiff testified that on the day in question there was no wind to carry it away and that such a mist was suspended in the air, just about even with his head "like a fog * * * over the pool." The chemist testified that when the acid is used in an enclosure, a fan or ventilation system should be near to carry off the fumes; and, if there is a wind, those using the acid should have it to their backs to blow the fumes away. This witness further testified that the gases emitted by using the acid, as aforesaid, has a corrosive effect on the eyes, which can be obviated to the extent of rendering the acid used less dangerous and harmful (and more effective for cleaning purposes), if it is diluted by four or five parts of water to one part of acid. This witness expressed the opinion that plaintiff's fall to the floor of the pool while using the acid, could have been caused by his becoming unsteady from sudden and intense burning and watering of his eyes and nose when they came in contact with the fumes; and he stated that the fumes could have this effect before being seen, and that it might be a shock to those who are not accustomed to using said acid. Plaintiff testified that when he inhaled the fumes, it was like the smell of ammonia and that, just prior to his falling to the floor of the pool, he felt himself getting weak and " * * * something put me out."

■ Defense counsel argues that since it was not otherwise established that breathing such fumes will cause a person to faint, or become unconscious, the evidence was insufficient to establish a causal connection between the use of the acid and plaintiff's fall. We do not agree. We think the testimony we have described, together with the reason-

able inferences deducible therefrom, sufficiently show that the fumes from the acid either caused, or contributed to, plaintiff's fall, especially in view of the absence of cogent or convincing direct proof that it was due to some independent or intervening cause.

Nor do we think that conceding (as they admitted) defendants' knowledge that muriatic acid is a dangerous substance, any court could say unequivocally, or as a matter of law, that under the evidence in this case, defendants had no duty to warn plaintiff about using it and to instruct him in ways and means of lessening or avoiding the danger involved therein.

 In their Proposition II defendants assert that plaintiff was not entitled to recover because he selected his own method of using the acid, but the court, in its Instruction No. 9 requested by them, submitted to the jury the issue of whether or not he did this, and told them if they found he did, then their verdict should be for defendants. In view of their verdict, the jury must have concluded that plaintiff's relationship to defendants was that of a servant, or employee, rather than an independent contractor; and defendants have never pleaded nor claimed otherwise. Even though an employee is left to his own methods of using an agency directed by his employer to be used (as plaintiff in this case testified Mrs. Donahoe directed use of the muriatic acid) he cannot avoid the responsibility of warning the employee of latent dangers involved therein, of which he knows, but the employee does not. An employee assumes the risk of only obvious dangers and those of which he knew, or should have known. The insidious dangers of using, or applying, muriatic acid in concentrated form, described by the chemist witness as existing in a situation like the one involved here, bear no close analogy or resemblance to those from striking rocks in plowing Oklahoma soil or to the other so-called "obvious" dangers involved in Oklahoma Pipe Line Co. v. Fallin, 176 Okl. 474, 56 P.2d 372, and other cases cited by defendants. In determining whether an employee has assumed the ordinary risks of any given employment, the employee's experience and capacity to appreciate said risks are matters to be given consideration; and, unless the employer, as a reasonable person, is justified in assuming that, because of the employee's experience and capacity, he appreciates said risks, then he is guilty of negligence unless he instructs him. Fisher v. Prairie, 26 Okl. 337, 109 P. 514, 517, 518. See also 35 Am.Jur., "Master and Servant", sec. 311. In the cited case this court said at page 519 of 109 P:

"In the Myhan case [Myhan v. Louisiana Electric Light & Power Co., 41 La.Ann. 964, 6 So. 799, 7 L.R.A. 172], it is said: 'The master is liable for subjecting the servant, through negligence, to greater risks than those which fairly belong to the employment, and the servant need only, in order to recover, to raise a reasonable presumption of negligence or fault on defendant's part.' In the same case, it is also said: 'A superior is presumed to know, and in law knows, that which it is his duty to know, namely, whatever may endanger the person and life of his employé in the discharge of his duties. In such cases the superior is bound specially to warn the employé of the nature of the danger, and will not be excused, in case of injury, unless he does prove that the employé well knew of the danger, and notwithstanding exposed himself willingly and deliberately to it.' That related to a wire improperly laid or strung and insulated. The master or superior was bound to know of this danger because he provided same. And, knowing of it, he is bound to warn the employé. But before he is to warn an employé as to the dangers incident to the employment, due care having been otherwise exercised, he must know or have reason to believe that the employé is inexperienced."

 In urging that defendants had no duty to warn plaintiff of the dangers of using the muriatic acid for the job in question, on the day in question, defendants argue that he had an equal, or better, opportunity

than they, to appreciate the dangers of so doing; and they emphasize the undisputed fact that he had used it for the same purpose several times before during the previous two years. On the other hand, it was undisputed that cleaning swimming pools is not one of plaintiff's regular employments and that he never performed that kind of work for any of the other families whose yards he mowed. It was also shown that he had only a third grade education and he was described by one of the physicians who examined him as "dim-witted." He testified that when Mr. Donahoe first brought him the muriatic acid in June, 1951, he had never used it before and "did not know what it was." In view of the many years that plaintiff had been employed by the better educated defendants, it is only reasonable to conclude that they had more than a slight or casual opportunity of knowing his limited experience with, and capacity for appreciating, the dangers involved in using the acid they, or one of them, placed in his hands and directed him to use for the job he was performing for them when injured. We think the questions of whether plaintiff knew, or should have appreciated, the dangers involved in such use of the acid, and whether, under the circumstances, it was their duty to warn him of such dangers and instruct him in ways and means of avoiding, or lessening, them in doing the job, were for determination by the jury. See Oklahoma Natural Gas Co. v. Walker, Okl., 269 P.2d 327; 35 Am.Jur., "Master and Servant", sec. 306, Note 19. We therefore conclude that the trial court committed no error in overruling the separate demurrers to the evidence and motions for a directed verdict interposed on behalf of the defendants.

Defendants' Proposition VI concerns alleged error of the court in failing to give Instruction No. 9½ until after the jury had finished more than the first 5 hours of its deliberation. It is represented without contradiction, that the jury began its deliberations soon after 1 o'clock p. m., and the record shows that thereafter, at about 6 o'clock p. m., the judge called the jury back into the court room and inquired as to whether they had reached a verdict. This inquiry was answered in the negative by the jury's foreman who thereupon requested "further instruction" (the nature of which does not appear), and said request was denied. Thereupon, the jury left the court house for their evening meal, and, upon their return, the court gave them the cited instruction, which, among other things, told the jury, for the first time, that if they found plaintiff guilty of "contributory negligence, which combining and concurring with the negligence of the defendant proximately caused the accident resulting in the injuries and damage, if any" their verdict should be for the "defendant", notwithstanding "his" negligence. Defendants find no fault with Instruction No. 9½; their only complaint concerns the court's tardiness in giving it. They concede, however, that where the court fails, in its original instructions, to instruct the jury on one of the decisive issues in the case, he may cure such error by a later and supplemental instruction on that issue even after the jury has "retired for deliberation * * *" citing Tit. 12, O.S.1951 § 582. Nevertheless they contend that here it is apparent that the court's failure to include Instruction No. 9½ in its original instructions deprived them of a fair trial because plaintiff had "a very doubtful case, with no connection between (his) injury and the negligence complained of * * *" In view of our already announced conclusion disagreeing with defense counsel as to the sufficiency of the evidence on the issue of causal connection, and in the absence of anything else which in any way approaches a demonstration of prejudice to their clients by the complained of conduct of the court, we think defendants' argument is without merit.

The judgment of the trial court is therefore affirmed; and, in accord with plaintiff's request therefor, judgment is here rendered against Commercial Standard Insurance Company, surety on defendants' supersedeas bond, to be entered and enforced by said court, as if there rendered.

JOHNSON, C. J., WILLIAMS, V. C. J., and WELCH, CORN, DAVISON. and HUNT, JJ., concur.